## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

JOSEPHINE GRAHAM, on behalf of
herself and all others similarly
situated,

Plaintiff,

v.

THE UNIVERSITY OF MICHIGAN,
and THE REGENTS OF THE
UNIVERSITY OF MICHIGAN,

Defendants.

Case No. 2:21-cv-11168-VAR-EAS

Hon. Victoria A. Roberts
Magistrate Judge Elizabeth A.
Stafford

## PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL
## OF SETTLEMENT AGREEMENT

For the reasons stated in the attached Memorandum in Support, and

supporting declarations and exhibits, Plaintiff, through her counsel, moves the

Court to:

1. Preliminarily approve the Settlement Agreement, attached hereto as

   Exhibit A, ("Settlement Agreement"), under Federal Rule of Civil

   Procedure 23;

2. Provisionally certify the Settlement Class set forth in the Settlement

   Agreement under Federal Rule of Civil Procedure 23(a) and 23(b)(2) and

   appoint Plaintiff as Class Representative;

3. Authorize dissemination of the Settlement Class Notice to the Settlement Class, including the proposed form of, method of, and schedule for dissemination of the Settlement Class Notice; and

4. Appoint the firms Lieff Cabraser Heimann & Bernstein, LLP, The Miller Law Firm, P.C., and Sauder Schelkopf LLC as Class Counsel under Federal Rule of Civil Procedure 23(g) to represent the Settlement Class.

Pursuant to Local Rule 7.1, Plaintiff sought consent in this motion from Defendants. Defendants do not object to the relief requested in this motion.

Dated: March 24, 2022                    Respectfully submitted,

*/s/ E. Powell Miller*
E. Powell Miller (P39487)
Sharon S. Almonrode (P33938)
THE MILLER LAW FIRM, P.C.
950 W. University Dr., Suite 30
Rochester, MI 48307
(248) 843-0997
(248) 652-2852
Email: epm@millerlaw.com
Email: ssa@millerlawpc.com

Jonathan D. Selbin
Annika K. Martin
Patrick I. Andrews
LIEFF CABRASER HEIMANN &
BERNSTEIN, LLP
250 Hudson Street, 8th fl.
New York, NY 10013
(212) 355-9500
Email: akmartin@lchb.com
Email: jselbin@lchb.com
Email: pandrews@lchb.com

Joseph G. Sauder
Lori G. Kier
SAUDER SCHELKOPF LLC
1109 Lancaster Avenue
Berwyn, PA 19312
(888) 711-9975
Email: jgs@sstriallawyers.com
Email: lgk@sstriallawyers.com

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

| | |
|---|---|
| JOSEPHINE GRAHAM, on behalf of herself and all others similarly situated, | Case No. 2:21-cv-11168-VAR-EAS |
| Plaintiff, | Hon. Victoria A. Roberts |
| | Magistrate Judge Elizabeth A. Stafford |
| v. | |
| THE UNIVERSITY OF MICHIGAN, and THE REGENTS OF THE UNIVERSITY OF MICHIGAN, | |
| Defendants. | |

## PLAINTIFF'S MEMORANDUM IN SUPPORT OF THEIR UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT AGREEMENT

# <u>TABLE OF CONTENTS</u>

**Page**

I.      INTRODUCTION ........................................................................1

II.     BACKGROUND AND PROCEDURAL HISTORY ......................3

    A.      Procedural History.........................................................3

    B.      Extensive Information Gathering and Negotiations............................5

    C.      The Proposed Settlement.................................................6

III.    THE CLASS ACTION SETTLEMENT PROCESS....................10

IV.     THE PROPOSED SETTLEMENT MERITS PRELIMINARY
    APPROVAL. ...........................................................................12

    A.      The Class Has Been Vigorously Represented.....................13

    B.      The Parties Negotiated Settlement at Arm's Length with the
        Assistance of an Experienced, Neutral Mediator..............................15

    C.      The Settlement Provides Meaningful Relief to the Class. ................17

        1.      The Costs, Risks, and Delay of Trial and Appeal...................17

        2.      Class Counsel Seek Reasonable Attorneys' Fees and
            Expenses and a Reasonable Service Award for Graham.........19

    D.      The Settlement Treats Class Members Equitably Relative to
        Each Other. ...............................................................20

    E.      The Sixth Circuit's Additional Factors Weigh in Favor of
        Settlement. ...............................................................21

V.      PROVISIONAL CERTIFICATION OF THE SETTLEMENT CLASS
    IS APPROPRIATE. ...................................................................23

    A.      Rule 23(a) is Satisfied. ...............................................23

        1.      The Settlement Class Meets the Numerosity
            Requirement. ...................................................23

        2.      The Case Presents Factual and Legal Questions Common
            to the Settlement Class.........................................24

        3.      Graham's Claims Are Typical of the Settlement Class
            Members' Claims.................................................25

# TABLE OF CONTENTS
## (CONTINUED)

**Page**

4.    Graham and Class Counsel Will Fairly and Adequately Protect the Interests of the Settlement Class............................26

B.    The Settlement Class Meets the Requirements of Rule 23(b)(2). .....28

VI.    THE PROPOSED NOTICE TO THE SETTLEMENT CLASS SHOULD BE APPROVED..........................................................30

VII.    THE PROPOSED FINAL APPROVAL HEARING SCHEDULE.............31

VIII.    CONCLUSION...........................................................................31

ATTACHMENT A ...................................................................1

# TABLE OF AUTHORITIES

**Page**

## Cases

*Arledge v. Domino's Pizza, Inc.*,
  2018 WL 5023950 (S.D. Ohio Oct. 17, 2018) ...................................................16

*Avio, Inc. v. Alfoccino, Inc.*,
  311 F.R.D. 434 (E.D. Mich. 2015)..................................................................24

*Bacon v. Honda of Am. Mfg., Inc.*,
  370 F.3d 565 (6th Cir. 2004)..........................................................................24

*Beattie v. CenturyTel, Inc.*,
  234 F.R.D. 160 (E.D. Mich. 2006), *aff'd in part, remanded on other grounds*, 511 F.3d 554 (6th Cir. 2007)........................................................ 24, 26

*Cates v. Cooper Tire & Rubber Co.*,
  253 F.R.D. 422 (N.D. Ohio 2008)....................................................................26

*Cole v. City of Memphis*,
  839 F.3d 530 (6th Cir. 2016)..........................................................................29

*Daffin v. Ford Motor Co.*,
  458 F.3d 549 (6th Cir. 2006)..........................................................................24

*Daoust v. Maru Rest., LLC*,
  2019 WL 1055231 (E.D. Mich. Feb. 2, 2019) .................................................23

*Daoust v. Maru Rest., LLC*,
  2019 WL 2866490 (E.D. Mich. July 3, 2019)..................................................20

*Davidson v. Henkel*,
  302 F.R.D. 427 (E.D. Mich. 2014)..................................................................24

*Doe #1 by Parent #1 v. New York City Dep't of Educ.*,
  2018 WL 3637962 (E.D.N.Y. July 31, 2018) .................................................15

*Does 1-2 v. Deja Vu Services, Inc.*,
  925 F.3d 886 (6th Cir. 2019)..................................................................... 15, 22

*Dozier v. Haveman*,
  2014 WL 5483008 (E. D. Mich. Oct. 29, 2014) .............................................29

*Garner Props. & Mgmt., LLC v. City of Inkster*,
  333 F.R.D. 614 (E.D. Mich. 2020)................................................. 16, 22, 24, 26

## TABLE OF AUTHORITIES
### (continued)

Page

*In re Auto. Parts Antitrust Litig. (In re Wire Harness Cases)*,
 2017 WL 469734 (E.D. Mich. Jan. 4, 2017) ...................................................23

*In re Cardizem CD Antitrust Litig.*,
 218 F.R.D. 5080 (E.D. Mich. 2003) ...................................................22

*In re Corrugated Container Antitrust Litig.*,
 643 F.2d 195 (5th Cir. 1981) ...................................................15

*In re Delphi Corp. Sec., Derivative & "ERISA" Litig.*,
 248 F.R.D. 483 (E.D. Mich. 2008) ................................................... 18, 27

*In re District of Columbia*,
 792 F.3d 96 (D.C. Cir. 2015) ...................................................30

*In re Flint Water Cases*,
 499 F. Supp. 3d 399 (E.D. Mich. 2021) ................................................... 11, 12

*In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*,
 722 F.3d 838 (6th Cir. 2013) ...................................................24

*IUE-CWA v. Gen. Motors Corp.*,
 238 F.R.D. 583 (E.D. Mich. 2006) ...................................................18

*Malam v. Adducci*,
 475 F. Supp. 3d 721 (E.D. Mich. 2020), *amended*, 2020 WL 4818894
 (E.D. Mich. Aug. 19, 2020) ...................................................29

*N.Y. State Teachers' Ret. Sys. v. Gen. Motors Co.*,
 315 F.R.D. 226 (E.D. Mich. 2016) ................................................... 13, 15, 16

*Peoples v. Annucci*,
 180 F. Supp. 3d 294 (S.D.N.Y. 2016) ...................................................11

*Powers v. Hamilton Cnty. Pub. Defender Comm'n*,
 501 F.3d 592 (6th Cir. 2007) ...................................................25

*Puerto Rico Aqueduct and Sewer Auth. v. Metcalf & Eddy, Inc.*,
 506 U.S. 139 (1993) ...................................................18

*Rikos v. P&G*,
 799 F.3d 497 (6th Cir. 2015) ...................................................25

## TABLE OF AUTHORITIES
### (continued)

**Page**

*Sheick v. Auto. Component Carrier LLC*,
  2010 WL 4136958 (E.D. Mich. Oct. 18, 2010) ...................................................17

*Sterling v. Velsicol Chem. Corp.*,
  855 F.2d 1188 (6th Cir. 1988)..............................................................................25

*Town of Smyrna v. Mun. Gas Auth. of Ga.*,
  723 F.3d 640 (6th Cir. 2013) ................................................................................18

*UAW v. Ford Motor Co.*,
  2006 WL 1984363 (E.D. Mich. July 13, 2006)...................................................18

*UAW v. Ford Motor Co.*,
  2008 WL 41043296 (E.D. Mich. Aug. 29, 2008) ................................................21

*UAW v. Gen. Motors Corp.*,
  497 F.3d 615 (6th Cir. 2007)....................................................................... passim

*Wal-Mart Stores, Inc. v. Dukes*,
  564 U.S. 338 (2011) ..................................................................................... 25, 30

*Yates v. Collier*,
  868 F.3d 354 (5th Cir. 2017)................................................................................29

*Young v. Nationwide Mut. Ins. Co.*,
  693 F.3d 532 (6th Cir. 2012)................................................................................27

### Statutes

28 U.S. Code § 1715 ................................................................................................31

### Rules

Fed. R. Civ. P. 23 ............................................................................................ *passim*

### Treatises

4 William B. Rubenstein, *Newberg on Class Actions* § 13:44 (5th ed. 2014) ........11

## CONTROLLING OR MOST APPROPRIATE AUTHORITY

- Federal Rule of Civil Procedure 23

- *UAW v. Gen. Motors Corp.*, 497 F.3d 615 (6th Cir. 2007)

- *In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, 722 F.3d 838 (6th Cir. 2013)

## <u>STATEMENT OF ISSUES PRESENTED</u>

1.      Should the Court preliminarily approve the class Settlement under Federal Rule of Civil Procedure 23?

Answer: Yes

2.      Should the Court provisionally certify the Settlement Class under Federal Rule of Civil Procedure 23(a) and (b)(2) and approve the notice plan?

Answer: Yes

3.      Should the Court appoint the firms Lieff Cabraser Heimann & Bernstein, LLP, The Miller Law Firm, P.C., and Sauder Schelkopf LLC as Class Counsel under Federal Rule of Civil Procedure 23(g) to represent the Settlement Class?

Answer: Yes

## I.   <u>**INTRODUCTION**</u>

This Court is now well-familiar with the allegations involving Dr. Robert Anderson's decades-long sexual abuse of student (and other) patients while employed as a physician at the University of Michigan ("UofM"). Those claims are the subject of a proposed class action and many related individual complaints. *See Doe MC-1 v. The University of Michigan*, 2:20-cv-10568 (Master Case Docket). This case has its genesis in that same history, but while those cases are brought by survivors of Dr. Anderson's abuse, this case was brought by a current UofM student—Josephine Graham—and looks to the present and future and seeks institutional reforms to ensure that something like this can never happen again at UofM.

After a year and a half of intensive, arm's length, and good-faith mediation overseen by the Court-appointed mediator, Robert F. Riley, the parties are pleased to advise the Court that they have reached a proposed class action settlement ("Settlement") through which UofM will implement expert-crafted best practices institutional reforms to help ensure the sort of abuses committed by Anderson can never happen again at UofM. Once these reforms are implemented, UofM can truly claim to be among the "Leaders and Best" in preventing and responding to campus sexual violence.

The Settlement's key feature, informed by the extensive involvement of leading experts retained by Class Counsel, is the creation of a Coordinated Community Response Team ("CCRT") at UofM—a best practice approach to addressing issues of campus sexual violence. A CCRT is a multidisciplinary standing committee composed of local community and campus stakeholders that provides a collaborative approach to assessing, planning, recommending, monitoring, and evaluating policies, procedures, and practices to prevent and properly respond to campus sexual violence. UofM's CCRT will serve as an invaluable body of expertise on issues of sexual violence and help develop University-wide education, prevention, and response reforms to better protect students and foster a campus culture that does not tolerate sexual violence. Important features of the CCRT include a balanced leadership structure with external and faculty oversight, a membership made up of key campus and community stakeholders, and a commitment to regularly communicate to the University community regarding its work to provide accountability through transparency.

The Settlement satisfies the requirements for preliminary approval. It is an outstanding result that achieves this litigation's central goal of ensuring meaningful institutional change at UofM via implementation of best practices institutional reform with external oversight. It balances the need for timely institutional reform

with the many risks of further litigation. It is reached on behalf of Ms. Graham and a class of all current UofM students. Importantly, no Class Members will release any monetary claims. The Settlement is well informed by comprehensive information gathering and consultation with field-leading experts. Finally, even though class notice is not mandatory under Rule 23(b)(2), the parties propose a robust, independently designed and implemented notice campaign and a Settlement website.

For all these reasons, Ms. Graham and her counsel submit that the Settlement is not just fair, reasonable, and adequate—it is an outstanding result for the Class. Ms. Graham respectfully requests that the Court: (1) grant preliminary approval; (2) provisionally certify the Settlement Class; (3) appoint her as Class Representative for the Settlement Class; (4) appoint the law firms of Lieff Cabraser Heimann & Bernstein, LLP, The Miller Law Firm, P.C., and Sauder Schelkopf LLC ("Class Counsel") as co-lead counsel for the Settlement Class; (5) direct notice to the Settlement Class; and (6) schedule a fairness hearing.

## II.   BACKGROUND AND PROCEDURAL HISTORY

### A.   Procedural History

This action follows a related class action filed on March 9, 2020, on behalf of Anderson survivors (the "Survivor Class"), seeking monetary and equitable relief under Title IX of the Educational Amendments of 1972, 20 U.S.C. § 1681, et

seq. ("Title IX"). *See Doe v. The University of Michigan*, No. 2:20-cv-10629 (E.D. Mich. March 9, 2020) ("Survivor Class Action"), ECF No. 1 (the Survivor Class Action Complaint). To facilitate resolution, the parties stipulated to a stay of discovery aside from limited materials (Master Case ECF No. 48) and to the appointment of a facilitative mediator, Robert F. Riley (Master Case ECF No. 53). On September 30, 2020, UofM moved to dismiss the Survivor Class Action, arguing, *inter alia*, that former UofM students lack standing to seek equitable relief. *See* Survivor Class Action ECF No. 36 (UofM's Motion to Dismiss the Survivor Class Action Complaint). The Court then entered an Order on October 2, 2020, ordering UofM to withdraw its motion (without prejudice) and compelling the parties to submit all legal issues to Mr. Riley for facilitation. Survivor Class Action ECF No. 37 (Stipulated Order Withdrawing UofM's Motion to Dismiss).

On May 20, 2021, Graham filed her Class Action Complaint against UofM, seeking equitable relief under Title IX on behalf of herself and a proposed class of "All current U of M students" (the "Settlement Class"). ECF No. 1. Soon thereafter, UofM filed a motion to dismiss Plaintiff's Class Action Complaint, arguing that Graham failed to state a claim under Title IX, that her claims are barred by legislative and sovereign immunity, that UofM is an improper party, and that Graham lacks standing to seek equitable relief without alleging she suffered sexual violence. *See* ECF No. 7. Graham opposed, and the motion was fully

-4-

briefed on August 15, 2021. *See* ECF Nos. 19 and 24. In a good-faith effort to negotiate relief, the parties agreed to numerous adjournments of UofM's motion. However, UofM's motion remains pending.

### B.     Extensive Information Gathering and Negotiations

Given the parties' early focus on resolution, Class Counsel's aim was gathering the information necessary to be fully informed and knowledgeable in negotiating a settlement on behalf of the Class, including UofM's historic and current policies and procedures relating to the prevention of and proper response to campus sexual violence. Selbin Decl. ¶¶ 34-35. To that end, Class Counsel thoroughly investigated the relevant facts and negotiated relief throughout 17 months of mediation, with the close supervision and involvement of Mr. Riley. Selbin Decl. ¶ 37; Riley Decl. ¶¶ 5-9.

For example, Class Counsel: (1) participated in four days of depositions of former UofM Vice Presidents Thomas Easthope and Henry Johnson, as well as the deposition of Charles Christian; (2) obtained and reviewed multiple document productions for purposes of the depositions and negotiating equitable relief, including multiple volumes on UofM's historic and current campus sexual violence policies and procedures; (3) obtained and reviewed exhaustive officer reports investigating Anderson, which included detailed statements from numerous victims, former and current employees, physicians, and other UofM

representatives; (4) investigated the facts and allegations underlying this matter from a variety of publicly available sources, including news publications and the WilmerHale Reports. Selbin Decl. ¶¶ 32-36.

Negotiations were also informed by Class Counsel's consultations with world-class experts on gender inclusion and safety, institutional responsibility, and crafting policies and procedures for disclosure, reporting, and prevention of sexual violence on campus, Nancy Cantalupo, Dr. Charol Shakeshaft, Sara Darehshori, and Dr. Jennifer Joy Freyd. Selbin Decl. ¶ 39, Exs. E (Shakeshaft CV), F (Darehshori CV), G (Freyd CV); Cantalupo Decl. Ex. A (Cantalupo CV). Throughout the course of mediation, these experts studied volumes of documents concerning UofM's current and historic policies, reviewed multiple drafts of the parties' competing relief proposals, participated in numerous conferences with Class Counsel and counsel for UofM, provided comments and guidance on proposals, provided several written resources during negotiations, proposed and vetted CCRT members, and vetted external co-chair candidates. Selbin Decl. ¶ 40. Together, they ensured Class Counsel's negotiation of equitable relief was well informed and focused on achieving the best practicable reforms at UofM.

## C.   __The Proposed Settlement__

The Settlement creates a major institutional reform at UofM to ensure it will implement best practices for the comprehensive prevention of and response to

campus sexual violence.[1] The Settlement's key feature is the creation of a CCRT. *See* Ex. A (the "Settlement Agreement").

A CCRT is a multidisciplinary standing committee composed of local community and campus stakeholders that provides a collaborative approach to preventing and responding to campus sexual violence. Cantalupo Decl. ¶ 13. CCRTs are recognized as a best practice in the comprehensive prevention of campus sexual violence. *Id.* at ¶ 15. CCRTs are such a proven prevention method that the United States Department of Justice's Office on Violence Against Women *requires* colleges and universities establish CCRTs to receive funding under its Grants to Reduce Violent Crimes Against Women on Campus Program. *Id.* at ¶ 18. Likewise, the 2017 Report by the White House Task Force to Protect Students from Sexual Assault identified CCRTs as the first of six primary elements of a comprehensive sexual misconduct prevention plan. *Id.* at ¶ 19. In addition, they are widely recognized by experts on sexual misconduct prevention as an indispensable tool to achieve comprehensive prevention of campus sexual violence. *Id.* Colleges and universities throughout the country, including the University of South Florida and the University of California system, have successfully employed CCRTs. *Id.*

---

[1] Consistent with Rule 23(b)(2) injunctive relief settlements, no Settlement Class members will release any monetary claims.

UofM's CCRT will include select members of the administration and faculty, students, survivors, and community members, with a balanced three co-chair leadership structure, including an independent expert. *See* Settlement Agreement at Ex. A. UofM's CCRT will have the authority and duty to assess, plan, monitor, and evaluate campus sexual abuse prevention and response efforts at UofM and help develop University-wide policies and procedures to protect students and foster a campus culture that works to prevent and properly respond to sexual violence on campus. *Id.* It will also help UofM maintain transparency and accountability with the campus community through regularly providing public updates online concerning what it is doing, what it has found, and its recommendations regarding policy, procedure, and practice changes. *Id.*; *see* Cantalupo Decl. ¶ 35 (explaining the importance of transparency).

Consistent with best practice, the CCRT's leadership will be comprised of three co-chairs: a co-chair from UofM's administration, a co-chair from UofM's faculty, and an external co-chair, who will serve as an outside expert. *See* Settlement Agreement at Ex. A; *see also* Cantalupo Decl. ¶¶ 25-29 (explaining the benefits of a three co-chair leadership structure). The Administrative Co-Chair will be the Special Advisor to the President and Executive Director, Equity Civil Rights & Title IX ("ECRT")—currently Tamiko Strickman. Settlement Agreement at Ex. A. The Faculty Co-Chair will be a tenured faculty member chosen by the

parties with expertise in the area of sexual violence—initially Sandra Levitsky,

Arthur F. Thurnau Professor and Associate Professor, Department of Sociology.

*Id.* The External Co-Chair, chosen by the parties and vetted by Class Counsel's

experts, will be Rebecca Leitman Veidlinger, expert in Title IX and campus sexual

misconduct. *Id.* The External Co-Chair will serve for at least the first three years of

the CCRT's existence, after which time the three co-chairs will vote on whether to

extend the External Co-Chair for a fourth year. *Id.* After either three or four years,

her position will expire and the two internal co-chairs will continue as co-chairs.

*Id.* She will be compensated through the Settlement's administrative expenses, to

maintain independence. *Id.*

Informed by the independence and expertise of the External Co-Chair, the

three co-chairs will be responsible for administering the CCRT's work,

establishing CCRT processes and procedures, overseeing communications to and

from the CCRT, steering the CCRT's work, and ensuring timely completion of

tasks. The CCRT co-chairs will also be responsible for escalating concerns and

making policy and practice recommendations to campus leadership. *Id.* The co-

chairs will regularly communicate with UofM's President regarding policy,

procedure, and practice changes and meet with the President to discuss the CCRT's

ongoing efforts. *Id.*

Beyond the co-chairs, CCRT membership will include a broad range of stakeholders, ranging from those who work closely with survivors as well as people who are in policymaking positions. *See* Cantalupo Decl. ¶ 31 (explaining proper CCRT membership structure). CCRT members will include the Sexual Assault Prevention and Awareness Center ("SAPAC") Director; Prevention, Education, Assistance & Resources ("PEAR") Director; tenured faculty; community stakeholders; student representatives; and survivor advocates and survivor representative. Settlement Agreement at Ex. A. Members will form working groups as appropriate, which may include additional campus and community representatives who are not CCRT members. *Id.* The CCRT will also have the flexibility and independence to adapt its membership and structure as needed by adding additional members or including additional individuals and entity representatives in various working groups. *Id.*

The CCRT will convene as needed throughout the year, but no less than once a semester during the academic year, and once during the summer. *Id.* The CCRT will exist for a minimum of five years from the date of final Court approval, but UofM may continue to operate the CCRT indefinitely thereafter. *Id.*

## III.   **THE CLASS ACTION SETTLEMENT PROCESS**

Federal courts favor and encourage settlements as a matter of public policy, particularly in class actions, where the costs, delays, and risks of continued

-10-

litigation might otherwise overwhelm any potential benefit the class could hope to claim. *See UAW v. Gen. Motors Corp.*, 497 F.3d 615, 632 (6th Cir. 2007) (noting "the federal policy favoring settlement of class actions"); *see also* 4 William B. Rubenstein, *Newberg on Class Actions* § 13:44 (5th ed. 2014) (noting that the law favors settlement "particularly in class actions" and collecting cases). This is even more so where, as here, the case concerns an alleged failure to implement adequate practices and policies, and "[a] settlement is vastly superior to a litigated outcome, which would [be] a non-consensual process not likely to result in an improved attitude or atmosphere . . . ." *Peoples v. Annucci*, 180 F. Supp. 3d 294, 308 (S.D.N.Y. 2016) (approving class action settlement in litigation challenging prison's solitary confinement practices).

Rule 23(e) of the Federal Rules of Civil Procedure requires a preliminary evaluation of a proposed class action settlement, the "first step" in a three-stage process. *In re Flint Water Cases*, 499 F. Supp. 3d 399, 410 (E.D. Mich. 2021). At this stage, the Court must initially determine whether it "will likely be able to" (1) approve the settlement as fair, reasonable, and adequate; and (2) "certify the class for purposes of judgment on the proposal." Fed. R. Civ. P. 23(e)(1)(B). Then, if appropriate, after the class is given notice and an opportunity to object, the Court must hold a hearing to consider whether to approve the settlement and certify the Settlement Class. *See* Fed. R. Civ. P. 23(e)(2), (4), (5).

-11-

IV.     **THE PROPOSED SETTLEMENT MERITS PRELIMINARY APPROVAL.**

Courts grant preliminary approval upon a finding that the proposed settlement falls "within the range of possible approval, appear[s] to be fair, and [is] free of obvious deficiencies." *In re Flint*, 499 F. Supp. at 410. In determining whether a proposed settlement initially appears fair, reasonable, and adequate, the Court considers whether (1) the proposed Class Representatives and Class Counsel have adequately represented the class; (2) the Settlement was negotiated at arm's length; (3) the relief provided is adequate; and (4) the Settlement treats class members equitably relative to each other. Fed. R. Civ. P. 23(e)(2).

In recently amending Rule 23, the Advisory Committee recognized that the various Circuits had independently generated their own lists of factors to consider in determining whether a settlement is fair, reasonable, and adequate.[2] Fed. R. Civ. P. 23(e)(2) advisory committee's note to the 2018 amendment. Because the Sixth Circuit factors are similar, caselaw in this Circuit applying those factors remains instructive here. That said, following the instructions of the Advisory Committee, Plaintiff will "present the settlement to the court in terms of a shorter list of core

---

[2] In the Sixth Circuit, those factors are: (1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest. *UAW*, 497 F.3d at 631.

concerns, by focusing on the primary procedural considerations and substantive

qualities that should always matter to the decision whether to approve the

proposal." *Id.* As detailed below, the Settlement merits preliminary approval.

### A.      The Class Has Been Vigorously Represented.

Rule 23(e)(2) first asks whether "the class representatives and class counsel

have adequately represented the class." Fed. R. Civ. P. 23(e)(2)(A). Relevant

considerations include the information available to counsel negotiating the

settlement, the stage of the litigation, and the amount of discovery taken. Fed. R.

Civ. P. 23(e)(2) advisory committee's note to the 2018 amendment.[3] The parties

need not unearth every last fact of a case before they can settle it; rather, they must

learn as much as necessary to ensure that claims are not settled prematurely. *See*

*N.Y. State Teachers' Ret. Sys. v. Gen. Motors Co.*, 315 F.R.D. 226, 237 (E.D.

Mich. 2016) (class settlement appropriate where the parties "had sufficient

information to evaluate the strengths and weaknesses of the case and the merits of

the Settlement.").

From the outset, Anderson's conduct was widely reported in a number of in-

depth investigative news articles—many of which included statements from

Anderson's patients, coworkers, and UofM administrators. These sources revealed

---

[3] Similarly, under the Sixth Circuit factors courts look to the amount of discovery
engaged in by the parties. *See UAW*, 497 F.3d at 631.

extensive information about Anderson's misconduct.[4] The WilmerHale Report detailed UofM's failure to prevent Anderson's sexual misconduct, as well as areas where UofM's policies on sexual violence fell short. Selbin Decl. Exs. C, D. Against that backdrop, reaching a fair, informed resolution of this case principally required a clear understanding of UofM's past and current cultural and systemic responses to sexual abuse on campus.

To learn this information, Class Counsel vigorously investigated the facts and allegations underlying this matter, reviewed volumes of information on UofM's historic and current policies and procedures on prevention of and response to sexual violence, and retained field-leading experts with whom Class Counsel worked closely. Selbin Decl. ¶ 35.

Armed with that knowledge, Class Counsel drafted a detailed Class Action complaint, extensively briefed UofM's motion to dismiss, and negotiated terms of relief over the course of nearly 17 months with the extensive involvement of their experts and an experienced mediator, Mr. Riley. *Id.* at ¶ 37; Riley Decl. ¶¶ 5-9. As a result, the parties reached an informed decision based on the seriousness and scope of the claims and issues, and the diligent work of the Court, the parties, their

---

[4] *See, e.g.*, Kim Kozlowski, Alum Says He Told UM Of Doctor's Sex Abuse In '68 But Never Got A Response, THE DETROIT NEWS (last visited March 7, 2022), https://www.detroitnews.com/story/news/local/michigan/2020/02/20/alum-says-he-told-university-michigan-about-doctor-sex-abuse/4817480002/ (Selbin Decl. Ex. B).

counsel, experts, and the mediator. *See N.Y. State Teachers' Ret. Sys.*, 315 F.R.D. at 237 (class settlement appropriate where counsel drafted a detailed complaint, prepared extensive briefing in response to a motion to dismiss, reviewed large volumes of documents, and consulted with relevant experts).

Conversely, proceeding with discovery in this case would require additional expenditure of time and expense, with little to no added benefit. *See Does 1-2 v. Deja Vu Services, Inc.*, 925 F.3d 886, 898 (6th Cir. 2019) ("settlements are permissible where, 'notwithstanding the status of discovery, plaintiffs' negotiators ha[ve] access to a plethora of information regarding the facts of their case.'" (quoting *In re Corrugated Container Antitrust Litig.*, 643 F.2d 195, 211 (5th Cir. 1981))); *Doe #1 by Parent #1 v. New York City Dep't of Educ.*, 2018 WL 3637962, at *11 (E.D.N.Y. July 31, 2018) (approving settlement where the parties "did not engage in formal discovery" yet counsel "nonetheless conducted a thorough investigation," including reviewing documents and consulting with an expert). This factor weighs in favor of approval.

### B.   The Parties Negotiated Settlement at Arm's Length with the Assistance of an Experienced, Neutral Mediator.

Rule 23(e)(2) next asks whether the settlement "was negotiated at arm's length." Fed. R. Civ. P. 23(e)(2)(B). To ensure negotiations were conducted at arm's length, courts look to the "conduct of the negotiations," recognizing that "the involvement of a neutral or court-affiliated mediator or facilitator in those

-15-

negotiations may bear on whether they were conducted in a manner that would protect and further the class interests." Fed. R. Civ. P. 23(e)(2) advisory committee's note to the 2018 amendment. Indeed, courts recognize that negotiations facilitated by a neutral are persuasive evidence of fair settlements. *See Garner Props. & Mgmt., LLC v. City of Inkster*, 333 F.R.D. 614, 627 (E.D. Mich. 2020) (noting "[t]he negotiations of the Settlement Agreement were conducted at arms-length by adversarial parties and experienced counsel, with facilitative assistance from Judge Roberts"); *see also Arledge v. Domino's Pizza, Inc.*, 2018 WL 5023950, at *2 (S.D. Ohio Oct. 17, 2018) (the "participation of an independent mediator in settlement negotiations virtually insures that the negotiations were conducted at arm's length and without collusion").

As described above, the negotiations that led to the Settlement were at all times conducted at arm's length, under the supervision of Mr. Riley, an experienced mediator. Selbin Decl. ¶ 16; Riley Decl. ¶¶ 5-9. Settlement was reached only after the parties engaged in a hard-fought, good-faith negotiation process, spanning 17 months, with the determined involvement of the parties, the mediator, experts, and the Court. Selbin Decl. ¶ 37; Riley Decl. ¶¶ 5-9. Separately, the Settlement bears none of the traditional signs of collusion. *See N.Y. State Teachers' Ret. Sys.*, 315 F.R.D. at 236 ("[C]ourts presume the absence of fraud or collusion in class action settlements unless there is evidence to the contrary."

-16-

(quoting *Sheick v. Auto. Component Carrier LLC*, 2010 WL 4136958, at \*19 (E.D. Mich. Oct. 18, 2010))). This factor likewise supports approval.

### C.   The Settlement Provides Meaningful Relief to the Class.

The next factor under Rule 23(e)(2) asks whether "the relief provided for the class is adequate." Fed. R. Civ. P. 23(e)(2)(C). Here, the relief provided to the Class under the Settlement is outstanding, especially considering "the costs, risks, and delay of trial and appeal;"[5] and "the terms of any proposed award of attorney's fees." *See* Fed. R. Civ. P. 23(e)(2)(C)(i), (iii).[6]

### 1.   The Costs, Risks, and Delay of Trial and Appeal

Through this Settlement, Graham achieved her principal goal of making meaningful best practice reforms to effect the comprehensive prevention of and response to campus sexual violence at UofM. Selbin Decl. ¶ 43; Graham Decl. ¶ 6.

In contrast to the important benefits conferred by the Settlement, litigating this case further would have carried significant costs, risks, and delay with little to no additional payoff. Indeed, the risks here are substantial: UofM's motion to

---

[5] Sixth Circuit factors likewise include the complexity, expense, and likely duration of the litigation and the likelihood of success on the merits. *See*, 497 F.3d at 631.

[6] Because the Settlement provides only equitable relief pursuant to Rule 23(b)(2), there is no claims process or distribution plan. *See* Fed. R. Civ. P. 23(e)(2)(C)(ii). Moreover, Plaintiff has not entered into any agreements "in connection with the proposal" under Rule 23(e)(3). *See* Fed. R. Civ. P. 23(e)(2)(C)(iv).

dismiss remains pending, which if granted would terminate Graham's (and thus the Class's) action. Despite Class Counsel's confidence in the facts and legal theory that underpin Graham's claims, they recognize that the claims are novel, increasing the risks faced by Plaintiff. Selbin Decl. ¶¶ 44-45; *see IUE-CWA v. Gen. Motors Corp.*, 238 F.R.D. 583, 596 (E.D. Mich. 2006) ("there is no such thing as risk-free, expense-free litigation").

Even if the Court were to deny UofM's motion to dismiss—and if Graham prevailed on the appeal[7] sure to follow—the parties would soon face substantial additional expenses including expert discovery and reports, numerous depositions, dispositive motion practice, and pre-trial preparations. *UAW v. Ford Motor Co.*, 2006 WL 1984363, at *24 (E.D. Mich. July 13, 2006) ("The costs and uncertainty of lengthy and complex litigation weigh in favor of settlement."). Moreover, any continued litigation would delay implementation of institutional reform, which provides immediate benefits to the Settlement Class without the risks and costs of further litigation. *See, e.g.*, *In re Delphi Corp. Sec., Derivative & "ERISA" Litig.*, 248 F.R.D. 483, 498 (E.D. Mich. 2008) (the "immediate benefit" of an injunctive relief settlement compared to "the delay, risk and uncertainty of continued

---

[7] State agencies can appeal immediately orders denying claims of immunity. *Town of Smyrna v. Mun. Gas Auth. of Ga.*, 723 F.3d 640, 645 (6th Cir. 2013) (citing *Puerto Rico Aqueduct and Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 147 (1993)).

-18-

litigation" weighed in favor of approval). Considering this and the delay associated with additional litigation, the robust relief secured through this Settlement represents an excellent result for the Settlement Class.

> **2.      Class Counsel Seek Reasonable Attorneys' Fees and Expenses and a Reasonable Service Award for Graham.**

Only *after* they reached agreement with respect to all material terms of the proposed relief set forth in the Settlement, the parties separately negotiated Class Counsel's attorneys' fees and expenses, as well as a service award for Graham, to be paid by UofM, subject to Court approval. Selbin Decl. ¶ 46; Riley Decl. ¶ 10. Because the Settlement provides non-monetary relief only under Rule 23(b)(2), any award of attorneys' fees and expenses will not come out of a common fund. Class Counsel will apply for a total award of attorneys' fees and costs not to exceed $5,000,000. Selbin Decl. ¶ 46. While Class counsel will provide a final breakdown with their motion for an award of fees, approximately $900,000 of that amount will be costs (largely expert and mediation fees), leaving fees of approximately $4.1 million. Based on lodestar incurred to date of approximately $3.5 million, that will reflect a very modest 1.17 multiplier on lodestar. Selbin Decl. ¶ 46. Class counsel will address these issues in detail in their fee papers, but such an award falls well within the range routinely approved by courts. *Id.*

Class Counsel also intends to seek, and UofM agrees to pay, a modest service award of $2,500 for Graham. Graham has devoted significant resources and

energy to this case, provided information to Class Counsel that informed the

pleadings and negotiation, and regularly communicated with Class Counsel about

strategy and major case developments. *See* Graham Decl. ¶¶ 8-9; *see also* Section

V.A., *infra* (discussing Graham's work on behalf of the Settlement Class).

Throughout the litigation, Graham has been involved and informed, agreeing to

publicly step forward for the relief achieved. Graham Decl. ¶¶ 8-9. Graham

reviewed and approved the final settlement agreement after consulting with Class

Counsel. *Id.* at ¶¶ 5-7. In light of this work, the limited award is eminently

reasonable and supported by law. *See Daoust v. Maru Rest.*, *LLC*, 2019 WL

2866490, at *6 (E.D. Mich. July 3, 2019) (approving a $5,000 award and noting

"service awards are common in class action cases and are important to compensate

plaintiffs for the time and effort expended in assisting the prosecution of the

litigation, the risks incurred by becoming and continuing as a litigant, and any

other burdens sustained by plaintiffs").

### D. The Settlement Treats Class Members Equitably Relative to Each Other.

The Settlement benefits *all* Class Members equally. Because the relief

requires campus-wide reform, the benefits are shared equally among the Settlement

Class. This factor supports preliminary approval.

E.    **The Sixth Circuit's Additional Factors Weigh in Favor of Settlement.**

In addition to the factors articulated in Rule 22(e)(2), Sixth Circuit courts have historically considered the opinions of class counsel, class representatives, and the reaction of absent class members, and asked whether the settlement supports public interest. *UAW*, 497 F.3d at 631.

Here, Class Counsel have extensive experience handling class action cases, including institutional sex abuse cases. Selbin Decl. ¶¶ 3-5. Class Counsel have thoroughly investigated and analyzed the claims in this action, made informed judgments regarding the proposed Settlement, and believe it is fair, reasonable, and adequate. *UAW v. Ford Motor Co.*, 2008 WL 4104329, at *26 (E.D. Mich. Aug. 29, 2008) ("The endorsement of the parties' counsel is entitled to significant weight, and supports the fairness of the class settlement."). Likewise, based on his experience and extensive involvement throughout negotiations, Mr. Riley agrees that the proposed Settlement provides fair, reasonable, and appropriate relief to the Settlement Class. Riley Decl. ¶ 12.

In addition, Ms. Graham actively consulted with Class Counsel throughout the settlement process and strongly supports the Settlement, because it provides groundbreaking reforms to make sure UofM is a safer place for her and all other students. Graham Decl. ¶ 6. Likewise, Class Counsel expect the vast majority of absent Settlement Class members will strongly support the Settlement and be

enthusiastic about the meaningful change and important reforms at their university, though a final accounting of that has to await final approval. Selbin Decl. ¶ 42.

Finally, the Settlement is in the public interest. "[T]here is a strong public interest in encouraging settlement of complex litigation and class action suits because they are 'notoriously difficult and unpredictable' and settlement conserves judicial resources.'" *Deja Vu Services, Inc.*, 925 F.3d at 899 (quoting *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 530 (E.D. Mich. 2003)). Graham submits there is no basis for not adhering to that policy here. The Settlement provides a tremendous benefit to the public interest by implementing significant institutional reforms to make UofM a safer place for its students. Moreover, the public interest is best served in this case by providing such relief to the Settlement Class as expeditiously as possible. *See Garner Props. & Mgmt., LLC v. City of Inkster*, 2020 WL 4726938, at *10 (E.D. Mich. Aug. 14, 2020) (concluding settlement was in the public interest where "allowing settlement in this matter will promote the fair and expeditious resolution of the matter").

\*   \*   \*

For all the reasons detailed above, the Settlement satisfies all the Rule 23(e)(2) and Sixth Circuit factors and preliminary approval is warranted here.

## V.     PROVISIONAL CERTIFICATION OF THE SETTLEMENT CLASS IS APPROPRIATE.

At this stage, the Court must also determine that it is likely to certify the Settlement Class for purposes of judgment on the proposal. Fed. R. Civ. P. 23(e)(1)(B)(ii). It is well established that a class may be certified for purposes of settlement. *See, e.g.*, *In re Auto. Parts Antitrust Litig. (In re Wire Harness Cases)*, 2017 WL 469734, at *1 (E.D. Mich. Jan. 4, 2017) (granting preliminary approval upon preliminary determinations that the settlement was approvable and a settlement class could be certified). Indeed, the fact that the parties have reached a settlement weighs in favor of class certification. *Daoust v. Maru Rest., LLC*, 2019 WL 1055231, at *1 (E.D. Mich. Feb. 2, 2019).

To be entitled to class certification, a plaintiff must satisfy each of Rule 23(a)'s four prerequisites to class certification: (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation. *See* Fed. R. Civ. P. 23(a). In addition, the proposed class must meet the requirements of one of the three subsections of Rule 23(b). *See id*. As demonstrated below, the proposed Settlement Class readily satisfies each of these requirements.

### A.     Rule 23(a) is Satisfied.

#### 1.     The Settlement Class Meets the Numerosity Requirement.

Courts generally find numerosity is satisfied with a class of forty or more members. *Garner*, 333 F.R.D. at 622 (citing *Davidson v. Henkel*, 302 F.R.D. 427,

436 (E.D. Mich. 2014)). The Settlement Class is sufficiently numerous, as it consists of more than 48,000 current students at UofM, making joinder impracticable. *See Avio, Inc. v. Alfoccino, Inc.*, 311 F.R.D. 434, 443 (E.D. Mich. 2015) ("sheer number of potential litigants in a class, especially if it is more than several hundred, can be the only factor needed to satisfy Rule 23(a)(1)" (quoting *Bacon v. Honda of Am. Mfg., Inc.*, 370 F.3d 565, 570 (6th Cir. 2004))); *Daffin v. Ford Motor Co.*, 458 F.3d 549, 552 (6th Cir. 2006) (recognizing that "while there is no strict numerical test, 'substantial' numbers usually satisfy the numerosity requirement"). Accordingly, Rule 23's numerosity requirement is satisfied.

## 2. The Case Presents Factual and Legal Questions Common to the Settlement Class.

The claims of the Settlement Class are sufficiently common as they depend on "questions of law [and] fact common to the class[.]" *In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, 722 F.3d 838, 852 (6th Cir. 2013). The commonality "standard is not that demanding[.]" *Beattie v. CenturyTel, Inc.*, 234 F.R.D. 160, 168 (E.D. Mich. 2006), *aff'd in part, remanded on other grounds*, 511 F.3d 554 (6th Cir. 2007) (alteration omitted). Indeed, the Supreme Court has held "'[e]ven a single [common] question' will do." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 359 (2011). This is because "[w]hat matters to class certification . . . is not the raising of common questions – even in droves – but rather, the capacity of a class-wide proceeding to generate common answers apt to drive the resolution

-24-

of the litigation." *Id.* at 350 (emphasis in original) (quotation marks and citations omitted).

Here, the Class claims focus on UofM's obligations to create a safe environment for its students free from sexual misconduct. *See Powers v. Hamilton Cnty. Pub. Defender Comm'n*, 501 F.3d 592, 619 (6th Cir. 2007) ("Cases alleging a single course of wrongful conduct are particularly well-suited to class certification." (citing *Sterling v. Velsicol Chem. Corp.*, 855 F.2d 1188, 1197 (6th Cir. 1988))).

Furthermore, common questions underlie all Settlement Class members' claims, namely whether UofM has appropriate policies and procedures for the prevention of, and proper response to, sexual violence on campus. The answer to this question is the same no matter who in the Settlement Class asks it, or how many times it is asked, and the answer to this common question is central to this litigation. *See Rikos v. P&G*, 799 F.3d 497, 505 (6th Cir. 2015) (commonality is satisfied where "a common question [] will yield a common answer for the class"). Accordingly, Rule 23's commonality requirement is satisfied here.

### 3. <u>Graham's Claims Are Typical of the Settlement Class Members' Claims.</u>

Typicality is satisfied if the class representative's claim arises from the same "course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory." *Garner*, 333 F.R.D. at 623

-25-

(quoting *Beattie*, 511 F.3d at 561). The typicality test is "not onerous," and "factual distinctions between named and unnamed class members do not preclude typicality." *Cates v. Cooper Tire & Rubber Co.*, 253 F.R.D. 422, 429 (N.D. Ohio 2008).

Here, Graham's claims and those of Settlement Class arise from the same course of conduct by UofM and the claims all are based on the same legal theory. *UAW v. Gen. Motors Corp.*, 2006 WL 891151, at *10 (E.D. Mich. Mar. 31, 2006) (typicality satisfied where defendant allegedly violated its "uniform obligation" to the class members). Therefore, typicality is satisfied.

### 4.   Graham and Class Counsel Will Fairly and Adequately Protect the Interests of the Settlement Class.

As the proposed Class Representative, Graham "will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Courts ask two questions to determine whether a proposed class representative will adequately represent the class: (1) whether the proposed class representative shares common interests with unnamed class members; and (2) whether the proposed class representative will prosecute the action vigorously on behalf of the class through qualified counsel. *See Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 543 (6th Cir. 2012).

Graham vigorously served in her representative capacity. Her work to advance the Settlement Class's interests includes: communicating diligently with

Class Counsel, reviewing the complaint and other pleadings, consulting with experts, vetting external co-chair candidates, meeting with UofM representatives, and reviewing settlement terms with Class Counsel, often in real time during negotiations. Graham Decl. ¶ 9; *see Delphi*, 248 F.R.D. at 494 (adequacy satisfied where the class representatives vigorously pursued the litigation and settlement of an action seeking injunctive relief). Graham will continue to act in the best interests of the Settlement Class members, all of whom have an interest in ensuring UofM implement best practice reforms for the comprehensive prevention of and response to campus sexual violence. *See Delphi*, 248 F.R.D. at 494 (noting "the adequacy requirement tends to merge with the commonality and typicality"). There is no conflict between Graham and the Settlement Class.

Additionally, Graham retained counsel with significant expertise in complex civil sex abuse litigation. As detailed in Class Counsel's attached declarations, Class Counsel are nationally recognized law firms in the field of complex class action litigation, including institutional sexual misconduct cases. *See* Selbin Decl. ¶¶ 4-5, Ex. A; Miller Decl. ¶¶ 2-3, Ex. A; and Sauder Decl. ¶¶ 3-5, Ex. A. Informed by their expertise, Class Counsel have zealously represented the Class during litigation, mediation, and the settlement process. *See* Section IV.A., *supra* (explaining adequacy of Class Counsel). All firms are well-capitalized, allowing them to dedicate considerable resources to the fullest extent necessary to achieve

the best possible result for class members. Class Counsel are qualified to undertake this litigation.

Separately, Rule 23(g) requires the Court to appoint Class Counsel to represent the Settlement Class. Considering Class Counsel's work in this action, their collective familiarity and experience in handling similar actions, and the resources they have committed to representing the Settlement Class, they should be appointed Class Counsel under Rule 23(g)(3), and confirmed under Rule 23(g)(1). *See* Selbin Decl. ¶¶ 15-16, Ex. A; Miller Decl. ¶ 4, 10, Ex. A; and Sauder Decl. ¶¶ 2, 14-15, Ex. A; *see also* Survivor Class Action ECF No. 25 (order appointing Class Counsel as Interim Class Counsel in the Survivor Class Action).

### B.      The Settlement Class Meets the Requirements of Rule 23(b)(2).

The proposed Settlement Class satisfies Rule 23(b)(2), which permits class treatment where defendants "ha[ve] acted or refused to act on grounds that apply generally to the class, so that final injunctive relief . . . is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). The operative question in that regard "is not whether Plaintiffs [are] entitled to relief on the merits; the question is whether the relief Plaintiffs request[ is] appropriate for the entire class." *Dozier v. Haveman*, 2014 WL 5483008, at *25 (E. D. Mich. Oct. 29, 2014).

Here, the relief provided to the Settlement Class—the creation of a multidisciplinary standing committee composed of local community and campus

stakeholders that provides a collaborative approach to preventing and appropriately responding to sexual violence on campus—is indivisible, respects the Settlement Class as a whole, and is exactly the sort of global redress appropriate for a 23(b)(2) class. *See, e.g.*, *Cole v. City of Memphis*, 839 F.3d 530, 540 (6th Cir. 2016) (Rule 23(b)(2) satisfied where plaintiffs sought and obtained an injunction "to protect all class members from future harm"). Thus, "final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2).

Class treatment is particularly appropriate where, like here, the action seeks relief to address institutional policies and practices. *See, e.g.*, *Malam v. Adducci*, 475 F. Supp. 3d 721, 744 (E.D. Mich. 2020), *amended*, 2020 WL 4818894 (E.D. Mich. Aug. 19, 2020) (certifying class of noncitizen detainees seeking declaratory and injunctive relief to protect themselves from COVID-19); *Yates v. Collier*, 868 F.3d 354, 371 (5th Cir. 2017) (affirming class certification where class of prisoners challenged excessive heating in prison); *In re District of Columbia*, 792 F.3d 96, 102 (D.C. Cir. 2015) (upholding class certification where class of citizens challenged failure of municipality to provide community-based care under Medicaid). Accordingly, certification of the Class under Rule 23(b)(2) is appropriate.

## VI.   THE PROPOSED NOTICE TO THE SETTLEMENT CLASS SHOULD BE APPROVED.

While notice is not mandatory for settlements that seek only non-monetary relief and release no monetary claims, the parties have agreed to provide notice to the Settlement Class in accordance with the notice plan as described in the Declaration of Jennifer Keough. *See* Keough Decl. 11-30 (describing the notice plan); *see also* Fed. R. Civ. P. 23(c)(2); *Dukes*, 564 U.S. at 362 ("The Rule provides no opportunity for (b)(1) or (b)(2) class members to opt out, and does not even oblige the District Court to afford them notice.").[8]

The notice plan here was designed by an experienced and well-qualified notice provider, JND, selected by Class Counsel after reviewing its extensive proposal. Selbin Decl. ¶ 24; Keough Decl. ¶ 4-8 (summary of JND's relevant experience). It includes all the information required to ensure Settlement Class members are effectively notified of the Settlement: the nature of the action, the class definition, a summary of the class claims, that a Settlement Class member

---

[8] For a Rule 23(b)(2) class, the Advisory Committee on the Federal Rules directs courts to exercise their authority to direct notice with care because the characteristics of a (b)(2) class reduce the need for notice. Fed. R. Civ. P. 23 advisory committee notes on 2003 amendment. Thus, "the discretion and flexibility established by subdivision (c)(2)(A) extend[s] to the method of giving notice," including informal methods such as "[a] simple posting in a place visited by many class members, directing attention to a source of more detailed information . . . ." *Id.*

may enter an appearance through an attorney, and the binding effect of final approval. Keough Decl. Exs. B-E. Additionally, the notice will be sent directly to Settlement Class members by both U.S. mail and email, published in media likely to be viewed by Settlement Class members, such as *The Michigan Daily*, and will be part of an online notice campaign. Keough Decl. ¶¶ 12-13, 28. Additionally, UofM will provide notice as required under 28 U.S.C. § 1715 (CAFA notice). Settlement Agreement at ¶5.2. Accordingly, the Notice should be approved and directed to the Settlement Class.

## VII.  **THE PROPOSED FINAL APPROVAL HEARING SCHEDULE**

The last step in the approval process is the final approval hearing, at which point the Court may hear any evidence and argument necessary to evaluate the Settlement. At that hearing, proponents of the Settlement may explain and describe its terms and conditions and offer argument in support of settlement approval, and Settlement Class members, or their counsel, may be heard in support of or in opposition to the Settlement. Graham respectfully requests the Court enter the proposed schedule attached as Attachment A.

## VIII.  **CONCLUSION**

For the foregoing reasons, Graham respectfully requests the Court (1) find it will likely approve the Settlement; (2) find it will likely certify the Settlement Class; (3) appoint the Plaintiff as Class Representative for the Settlement Class; (4)

appoint Class Counsel as counsel for the Settlement Class; (5) direct notice to the

Settlement Class; and (6) set a final approval hearing.


Dated: March 24, 2022                    Respectfully submitted,

                                         /s/ E. Powell Miller
                                         E. Powell Miller (P39487)
                                         Sharon S. Almonrode (P33938)
                                         THE MILLER LAW FIRM, P.C.
                                         950 W. University Dr., Suite 30
                                         Rochester, MI 48307
                                         (248) 843-0997
                                         (248) 652-2852
                                         Email: epm@millerlaw.com
                                         Email: ssa@millerlawpc.com

                                         Jonathan D. Selbin
                                         Annika K. Martin
                                         Patrick I. Andrews
                                         LIEFF CABRASER HEIMANN &
                                         BERNSTEIN, LLP
                                         250 Hudson Street, 8th fl.
                                         New York, NY 10013
                                         (212) 355-9500
                                         Email: akmartin@lchb.com
                                         Email: jselbin@lchb.com
                                         Email: pandrews@lchb.com

                                         Joseph G. Sauder
                                         Lori G. Kier
                                         SAUDER SCHELKOPF LLC
                                         1109 Lancaster Avenue
                                         Berwyn, PA 19312
                                         (888) 711-9975
                                         Email: jgs@sstriallawyers.com
                                         Email: lgk@sstriallawyers.com

## <u>CERTIFICATION</u>

I HEREBY CERTIFY that on this 24th day of March 2022, a copy of the foregoing Plaintiff's Motion for Preliminary Approval of Settlement Agreement was filed electronically. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

*/s/ E. Powell Miller*
E. Powell Miller

## ATTACHMENT A

Plaintiff proposes the following schedule for further settlement proceedings:

| Event | Date |
|---|---|
| Notice Provider sends Notice ("Notice Date") | 28 days after entry of preliminary approval order |
| Deadline for Plaintiff to file Final Approval Motion and Attorneys' Fees Motion | 30 days after Notice Date |
| Objection Deadline | 60 days after Notice Date |
| Deadline for Plaintiff to file response to Objections | 75 days after Notice Date |
| Hearing on Final Approval and Fee Motion | Subject to the Court's discretion, the parties recommend 100 days after entry of preliminary approval order |