# EXHIBIT A

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

---

**JOSEPHINE GRAHAM, on behalf of herself**
**and all others similarly situated,**

      **Plaintiff**

**v.**

**UNIVERSITY OF MICHIGAN, and THE**
**REGENTS OF THE UNIVERSITY OF**
**MICHIGAN,**

      **Defendants**

Case No.: 2:21-cv-11168-VAR-EAS

<u>**SETTLEMENT AGREEMENT**</u>

This Settlement Agreement and Release dated March 23, 2022 (the "Agreement" or the "Settlement"), is made and entered into by and among Plaintiff Josephine Graham ("Plaintiff" or "Class Representative"), through her undersigned counsel, and Defendants the University of Michigan and the Regents of the University of Michigan (the "University") (together, "Defendants"), to resolve Plaintiff's class-wide claims for non-economic relief. The Plaintiff and Defendants are collectively referred to as the "Parties" or "Settling Parties." The Agreement is intended to fully, finally, and forever resolve, discharge, and settle the Released Claims (as defined herein) as against the Released Parties (as defined herein), subject to the approval of the Court and the terms and conditions set forth in the Agreement.

1.      **RECITALS**

WHEREAS, in the matter styled as *Doe et al. v. University of Michigan et al.*, No. 2:20-cv-10629-VAR-EAS (E.D. Mich., filed Mar. 9, 2020), the plaintiffs in that matter alleged that now-deceased Dr. Robert Anderson, M.D., assaulted and abused, sexually harassed, or otherwise acted inappropriately towards patients while he was employed as a physician at the University of Michigan's University Health Services student health center and in the University of Michigan's Athletic Department, and that the University of Michigan failed to respond appropriately to Anderson's conduct;

WHEREAS, the *Doe et al. v. University of Michigan et al.*, No. 2:20-cv-10629-VAR-EAS, complaint included class allegations and sought damages and other monetary or economic relief, as well as injunctive and other equitable or non-economic relief, and attorneys' fees and costs;

WHEREAS, on May 26, 2020, the Court appointed E. Powell Miller of The Miller Law Firm, P.C.; Annika K. Martin of Lieff Cabraser Heimann & Bernstein, LLP; and Joseph Sauder of Sauder Schelkopf LLC, to serve as interim class counsel pursuant to Fed. R. Civ. P. 23(g) and the Manual for Complex Litigation 4th §§ 10 & 21 in the *Doe et al. v. University of Michigan et al.*, matter (Case No. 2:20-cv-10629-VAR-EAS, ECF No. 25);

WHEREAS, on September 10, 2020, the plaintiffs in the *Doe et al. v. University of Michigan et al.*, matter filed a First Amended Class Action Complaint (Case No. 2:20-cv-10629-VAR-EAS, ECF No. 35);

WHEREAS, on September 29, 2020, interim class counsel in *Doe et al. v. University of Michigan et al.* (Case No. 2:20-cv-10629-VAR-EAS, ECF No. 35) informed counsel for Defendants that the plaintiffs in that matter intended to file a Second Amended Class Action Complaint to, *inter alia*, add claims by Josephine Graham;

WHEREAS, on September 30, 2020, the Defendants filed a Motion to Dismiss the First Amended Class Action Complaint in *Doe et al. v. University of Michigan et al.*, (Case No. 2:20-cv-10629-VAR-EAS, ECF No. 36);

WHEREAS, on October 2, 2020, the Court ordered Defendants to withdraw all motions to dismiss filed on September 30, 2020, including the Motion to Dismiss the First Amended Class Action Complaint in *Doe et al. v. University of Michigan et al.*, "[s]o that the parties and their counsel [could] devote full attention to facilitative mediation" (Case No. 2:20-cv-10629-VAR-EAS, ECF No. 125);

WHEREAS, on November 15, 2020, the Court entered a Stipulated Order in *Doe et al. v. University of Michigan et al.*, whereby: in compliance with the Court's October 2, 2020 Order, Defendants withdrew without prejudice their Motion to Dismiss the First Amended Class Action Complaint; Defendants fully maintained and preserved all rights and defenses; and plaintiffs also fully maintained and preserved all rights, (Case No. 2:20-cv-10629-VAR-EAS, ECF No. 125);

WHEREAS, the Parties engaged in numerous mediation sessions and arm's-length settlement negotiations beginning in approximately October 2020;

WHEREAS, those mediation sessions and settlement negotiations were informed by the University of Michigan's production of documents and the Parties' exchanges of information with each other, as coordinated and supervised by the Court-appointed mediator, Robert Riley;

WHEREAS, on May 20, 2021, Plaintiff Josephine Graham filed a separate class action complaint, styled as *Graham v. University of Michigan et al.*, No. 2:21-cv-11168-VAR-EAS

(E.D. Mich., filed May 20, 2021), alleging that the University of Michigan does not maintain or properly enforce sufficient policies and procedures for preventing and responding to sexual misconduct on campus;

WHEREAS, the class action complaint in *Graham v. University of Michigan et al.*, No. 2:21-cv-11168-VAR-EAS, did not seek damages or other monetary economic relief (other than attorneys' fees and costs), and instead sought only injunctive or other equitable or non-economic relief;

WHEREAS, on June 4, 2021, Defendants in *Graham v. University of Michigan et al.*, No. 2:21-cv-11168-VAR-EAS, filed a Motion to Dismiss, which Plaintiff opposed, and which has now been fully briefed;

WHEREAS, given the overlap in certain allegations in *Graham v. University of Michigan et al.*, No. 2:21-cv-11168-VAR-EAS, and in *Doe et al. v. University of Michigan et al.*, No. 2:20-cv-10629-VAR-EAS, the mediation and settlement negotiations that began in connection with *Doe et al. v. University of Michigan et al.*, No. 2:20-cv-10629-VAR-EAS included discussion of issues that were central to both matters;

WHEREAS, the Parties continued their negotiations and exchanges of information through and including February 2022;

WHEREAS, after carefully considering the facts, applicable law, and the risks and uncertainty of continued litigation, and as a result of having engaged in extensive negotiations, the Parties agree that it is in their mutual best interests to finally resolve all claims in this Litigation (as defined herein) on fair, reasonable, and adequate terms as set forth in this Agreement;

WHEREAS, the Parties agree that by entering into this Settlement, no Defendant is admitting any liability, fault, or violation of law, but that Defendants deny all allegations and claims asserted against them;

WHEREAS, the Parties are entering into the Settlement to avoid the risks, burdens, and expense of continued litigation;

- 3 -

WHEREAS, Plaintiff and each Defendant have independently determined that it is desirable and beneficial for all claims in this Litigation to be fully and finally resolved in the manner and upon the terms and conditions set forth in this Agreement;

WHEREAS, on February 17, 2022, the Parties reached an agreement-in-principle with respect to all claims in this Litigation, subject to final documentation; and

WHEREAS, the Parties, by and through their respective undersigned counsel, have agreed to this Settlement on the terms and conditions set forth below.

NOW, THEREFORE, IT IS HEREBY STIPULATED AND AGREED by and among Plaintiff (for herself and the Class Members) and Defendants, by and through their counsel, that, subject to the approval of the Court, the Released Claims will be finally and fully compromised, settled, and released, and the Released Claims will be dismissed with prejudice as to all Parties, upon and subject to the terms and conditions of the following Agreement.

## 2.    DEFINITIONS

The following terms, when used in this Agreement, have the meanings as set forth below. All terms defined in the singular have the same meaning when used in the plural, and all terms defined in the plural have the same meaning when used in the singular.

2.1    "Administrative Expenses" means the reasonable costs associated with notice and administration of this Settlement, and the reasonable fees and expenses of the Escrow Agent.

2.2    "Class" or "Class Members" means all current students of the University of Michigan.

2.3    "Class Counsel" means the law firms of Lieff Cabraser Heimann & Bernstein, LLP, The Miller Law Firm, P.C., and Sauder Schelkopf LLC.

2.4    "Class Representative" means the individual Plaintiff, Josephine Graham, who brought suit in this Litigation.

- 4 -

2.5     "Court" means the United States District Court for the Eastern District of Michigan.

2.6     "Effective Date" means the date on which the time for filing an appeal from Final Approval has either expired without an appeal being filed, or if later, after any appeal has been fully resolved upholding Final Approval (including requests for rehearing, rehearing *en banc*, and petitions for certiorari), at which time the obligations set forth in this Agreement and the terms of this Agreement shall become binding on Defendants, the Class Representative, the Class, Class Counsel, and anyone else who has undertaken an obligation under this Agreement.

2.7     "Escrow Account" means an escrow account controlled by the Escrow Agent, which such account will be established at a national banking institution.

2.8     "Escrow Agent" means a neutral third-party escrow agent, to be agreed upon by the Parties.

2.9     "External Co-Chair Fees" shall have the meaning ascribed to it in Paragraph 4.3.

2.10    "Final Approval" means the order entered by the Court granting final approval of the Settlement embodied in this Agreement with respect to the relief to the Class (including the Class Representative service award, and expressly exempting attorneys' fees and expenses) and dismissing with prejudice all Released Claims against the Defendants.

2.11    "Final Approval Hearing" means the hearing to be conducted by the Court to consider whether to grant Final Approval of the Agreement.

2.12    The "Litigation" means all proceedings in *Graham v. University of Michigan et al.*, No. 2:21-cv-11168-VAR-EAS.

2.13    "Non-Economic Relief Measures" means the specific measures the University of Michigan will undertake pursuant to this Settlement, as set forth in Exhibit A hereto.

2.14    "Notice" means the Notice of Pendency and Proposed Settlement of Class Action, together with its exhibits, substantially in the form of a proposed Notice that will be agreed upon by the Parties and submitted to the Court.

- 5 -

2.15    "Order on Attorneys' Fees" means an order regarding Class Counsel's application for an award of reasonable attorneys' fees and expenses, which Class Counsel will request be entered as a separate order.

2.16    "Preliminary Approval" means the entry of the Court's order granting preliminary approval of this Settlement, substantially in the form of the [Proposed] Preliminary Approval Order, attached as Exhibit B hereto.

2.17    "Released Claims" means any and all claims, counterclaims, rights, causes of action, liabilities, actions, suits, demands, disputes, obligations, judgments, duties, defenses, liens, administrative proceedings, costs, expenses, matters, and issues, of any kind whatsoever, known or unknown, suspected or unsuspected, matured or unmatured, disclosed or undisclosed, contingent or absolute, liquidated or unliquidated, accrued or unaccrued, apparent or unapparent, at law or in equity, existing under federal, state, local, foreign, tribal, or common law, that were or could have been asserted against the Released Parties arising out of, relating to, by reason of, or in connection with the acts, events, facts, matters, transactions, occurrences, statements, representations, misrepresentations, omissions, or any other matter whatsoever set forth in or otherwise related, directly or indirectly, to the matters that were alleged or that could have been alleged in the Litigation. Notwithstanding the foregoing, "Released Claims" does *not* include any claims for damages (whether actual, nominal, punitive, exemplary, statutory, or otherwise) or any claims relating to the enforcement of the Settlement.

2.18    "Released Parties" means any Defendant, and each of them, and all of Defendants' representatives; insurance carriers and insurers of their insurance carriers; estates; current and former administrators; current and former officers; current and former Regents of the University of Michigan; current and former employees and agents in their official and individual capacities; predecessors; successors; subsidiaries; parents; affiliates; assigns; and any current and former employees, current and former officers, current and former administrators or current and former agents of any of Defendants' subsidiaries, parents, affiliates, or assigns.

2.19    "Releasing Plaintiffs" means Plaintiff and all Class Members.

2.20    "Settlement" means the terms and conditions of settlement embodied in this Agreement.

## 3.    SCOPE AND EFFECT OF SETTLEMENT

3.1    **Scope of the Settlement.** This Settlement compromises and resolves the Released Claims only.

3.2    **Class Certification.** The Parties stipulate to, and waive their rights to appeal, class certification, for settlement purposes only, of the following Class pursuant to Fed. R. Civ. P. 23(a) and 23(b)(2): all current students of the University of Michigan.

3.3    **Defendants' Reservation of Rights.**  Defendants do not agree, for any purpose other than to effectuate this Settlement, that, *inter alia*: any Plaintiff, Class Representative, or Class Member has standing to pursue the Released Claims; the Court has jurisdiction over any claims based upon alleged violations of Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681, *et seq.*, that allegedly occurred before October 21, 1986; or class certification is appropriate for any purpose other than to effectuate this Settlement.  Defendants expressly reserve their right to contest these and other disputed legal and factual issues, including standing, federal court jurisdiction, and class certification, in the event this Settlement is not approved or fails to become effective for any reason.  Defendants further expressly reserve their right to contest these and other disputed legal and factual issues, including standing, federal court jurisdiction, and class certification, in connection with any aspects of the Litigation, or in any other judicial, arbitral, administrative, investigative, or other proceeding of whatsoever kind or nature, that are not settled through this Settlement.  The Parties agree that if the Settlement is not approved or fails to become effective for any reason, the Litigation will return to the status quo as of February 17, 2022.

3.4    **Preliminary Approval Proceedings.**  Promptly after execution of the Agreement, Plaintiff will submit the Agreement together with its Exhibits to the Court and will apply for entry of an order substantially in the form of the [Proposed] Preliminary Approval Order, requesting, *inter alia*, preliminary approval of the Settlement set forth in the Agreement;

the setting of dates for the mailing of the Notice, objection deadline, and Final Approval Hearing; and approval of the Notice.

3.5     **Binding Effect of Settlement upon Class Members.**  If this Settlement is approved by the Court, beginning on the Effective Date, all persons within the Class will be bound by the terms of the Settlement.

3.6     **Objections.**  Any Class Member who wishes to object to the fairness, reasonableness, or adequacy of the Settlement, or the application of Class Counsel for an award of attorneys' fees and costs and/or for service award for Plaintiff, must timely do so in the manner specified in the Preliminary Approval and in any subsequent notice or order concerning the application for attorneys' fees and costs and/or for service award for Plaintiff.

3.7     **Final Approval Proceedings.**  Class Counsel will request that the Court hold the Final Approval Hearing after Notice is given to Class Members. Class Counsel agree to share with Defendants all Settlement approval documents which they intend to file with the Court, and Defendants shall have reasonable opportunity to comment on Settlement approval documents before they are filed.  At the Final Approval Hearing, Class Counsel will request entry of an order granting final approval of this Agreement, substantially in the form of the [Proposed] Final Order and Judgment:

> (a)     finally approving the Settlement as fair, reasonable, and adequate, within the meaning of Rule 23 of the Federal Rules of Civil Procedure, and directing its consummation pursuant to its terms;

> (b)     directing that the Released Claims be dismissed with prejudice, and releasing the Released Claims as set forth below; and

> (c)     containing such other and further provisions consistent with the terms of the Settlement to which the Parties expressly consent in writing.

3.8     **Extinguishment of Released Claims.**  Upon the Effective Date, all Releasing Plaintiffs and anyone claiming through or on behalf of any of them, including but not limited to each of their respective heirs, estates, predecessors, successors, agents, and assigns, will be

deemed to have fully, finally, and forever released, relinquished, and discharged all Released Claims against the Released Parties.  Upon the Effective Date, the Releasing Plaintiffs will be forever barred and enjoined from commencing, instituting, prosecuting, or continuing to prosecute any action or other proceeding in any court of law or equity, arbitration tribunal, or administrative forum, asserting any Released Claim against any of the Released Parties.  As to the Released Claims only, all Releasing Plaintiffs hereby expressly, knowingly, and voluntarily waive any and all provisions, rights, and benefits conferred by any law of any state or territory of the United States which is similar, comparable, or equivalent to the provisions of Section 1542 of the California Civil Code, which provides as follows:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.

Releasing Plaintiffs expressly waive and relinquish any and all rights and benefits that they may have under, or that may be conferred upon them by, the provisions of Section 1542 of the California Civil Code, or any other law of any state or territory that is similar, comparable, or equivalent to Section 1542, to the fullest extent that they may lawfully waive such rights or benefits pertaining to the Released Claims.  In connection with such waiver and relinquishment, Releasing Plaintiffs hereby acknowledge and understand that they are aware that they or their attorneys may hereafter discover claims or facts in addition to or different from those that they now know or believe exist with respect to the Released Claims, but they expressly agree that they have taken these possibilities into account in electing to participate in this Settlement, and that it is their intention to hereby fully, finally, and forever settle and release all of the Released Claims known or unknown, suspected or unsuspected, matured or unmatured, disclosed or undisclosed, contingent or absolute, liquidated or unliquidated, accrued or unaccrued, apparent or unapparent, that they have against the Released Parties.  In furtherance of such intention, the release herein given by Releasing Plaintiffs to the Released Parties shall be and remain in effect as a full and complete general release as to the Released Claims, notwithstanding the discovery or existence of any such additional different claims or facts. Each of the Parties expressly acknowledges that he/she/it has been advised by his/her/its attorney of the contents and effect of

Section 1542, and with knowledge, each of the Parties hereby expressly waives whatever benefits he/she/it may have had pursuant to such section.  Plaintiff acknowledges, and the Class Members shall be deemed by operation of the Final Approval to have acknowledged, that the foregoing waiver was separately bargained for and a material element of the Settlement of which this release is a part. The foregoing waiver shall not be construed to include any claims for damages (whether actual, nominal, punitive, exemplary, statutory, or otherwise).

4.    **SETTLEMENT CONSIDERATION**

   A.    **Non-Economic Relief**.

4.1    Upon the Effective Date, the University of Michigan will implement additional oversight procedures for identification, prevention, and reporting of improper sexual conduct at the University of Michigan.  The specific measures that the University of Michigan will undertake to satisfy these provisions are set forth in the Non-Economic Relief Measures, attached hereto as Exhibit A.

   B.    **Administrative Expenses and External Co-Chair Fees**.

4.2    Defendants shall be responsible for payment of the Administrative Expenses. Within 10 days after Preliminary Approval, Defendants will deposit into the Escrow Account, pursuant to instructions to be delivered by Class Counsel, an advance of $125,000 applicable towards Administrative Expenses.  To the extent the Administrative Expenses exceed $125,000, then: Class Counsel shall provide Defendants (through Defendants' counsel) invoices reflecting such costs; Defendants shall have 30 days to review and approve or object to the invoices, which approval shall not be unreasonably withheld, conditioned, or delayed; the Parties shall promptly seek resolution of any disagreement over the additional costs through the Court-appointed mediator, Robert Riley; and Defendants shall pay the approved balance of such additional costs by depositing that sum into the Escrow Account within 30 days of their approval of the additional costs or the resolution of any dispute relating thereto, as the case may be.

4.3    Defendants shall be responsible for the payment of the reasonable fees and expenses incurred by the External Co-Chair (as defined in Exhibit A). The External Co-Chair's reasonable fees and expenses are hereinafter referred to as "External Co-Chair Fees."  Within 10

days after Preliminary Approval, Defendants will deposit into the Escrow Account, pursuant to instructions to be delivered by Class Counsel, a retainer of $50,000 applicable toward the External Co-Chair Fees.  On a monthly basis, the External Co-Chair shall submit an itemized invoice detailing the External Co-Chair Fees to the Escrow Agent, Class Counsel, and the University pursuant to instructions that will be provided.  Class Counsel and the University shall have 20 days to review the itemized invoice of External Co-Chair Fees.  Upon expiration of that 20-day period, if the Escrow Agent has not received a notice from either Class Counsel or the University objecting to any of the External Co-Chair Fees in the invoice, then the Escrow Agent shall promptly pay the invoice in full using available funds in the Escrow Account.  To the extent either Class Counsel or the University disputes any of the External Co-Chair Fees on the itemized invoice, then:  Class Counsel or the University, as the case may be, shall provide notice to the Escrow Agent (with a copy to the External Co-Chair, Class Counsel, and the University) reasonably describing the dispute; the Escrow Agent, using available funds in the Escrow Account, shall promptly pay the itemized invoice *less* the amount subject to the dispute; the Party raising the dispute shall, within 10 days, submit the dispute to the Court-appointed mediator, Robert Riley, for prompt resolution; and upon resolution of the dispute, the Escrow Agent, using available funds in the Escrow Account, shall pay whatever portion of the disputed amount that Mr. Riley determines to be properly due and owing.  If at any time during the term of the External Co-Chair (whether three years or four years, pursuant to the procedure discussed in Exhibit A, Section I.A) the balance of available funds in the Escrow Account falls below $10,000, the Escrow Agent shall notify the University of the balance (with a copy to Class Counsel), and within 30 days the University shall deposit into the Escrow Account an amount of funds sufficient to increase the balance of available funds to $50,000.

4.4     Upon the expiration of the term of the External Co-Chair (whether three years or four years), the Escrow Agent shall, using available funds from the Escrow Account, process and pay any outstanding and owing External Co-Chair Fees and Administrative Expenses. Following such payment, the Escrow Agent shall refund to the University any funds remaining in the Escrow Account, and then close the Escrow Account and provide notice to the Parties that it has been closed.

5.      **NOTICE AND ADMINISTRATION**

5.1      **Notice Program.**  Upon entry of the Preliminary Approval, the University of
Michigan will reasonably assist in the identification of all potential Class Members.  For
purposes of clarification, however, the University anticipates making available reasonably
available information sufficient to identify the Class Members.  Direct notice of the Settlement
will begin within 28 days after entry of the Preliminary Approval. The proposed notice program
is described in the declaration of Jennifer M. Keough to be concurrently filed with the Motion
for a Preliminary Approval Order.

5.2      Defendants shall provide notice to appropriate state and federal officials as
required under 28 U.S.C. § 1715.

6.      **ATTORNEYS' FEES AND EXPENSES; SERVICE AWARD**

6.1      **Attorneys' Fees and Expenses.**  All attorneys' fees and expenses will be paid
separately by Defendants. Any fee and expense award must be approved by the Court. Class
Counsel will apply on behalf of themselves for an award of attorneys' fees and reimbursement of
expenses contemporaneously with their motion for Final Approval. Class Counsel's request for
attorneys' fees and reimbursement of expenses will not exceed $5,000,000, and Defendants
agree to pay attorneys' fees and expenses in the amount awarded by the Court up to and
including $5,000,000.  If the fee and expenses award approved by the Court is less than the
amount sought by Class Counsel, this will not be a basis for setting aside this Settlement.

6.2      Defendants shall pay such award of attorneys' fees and expenses within 30 days
of the Order on Attorneys' Fees. Defendants shall pay the full amount of attorneys' fees and
expenses awarded to Class Counsel by wiring the funds to Class Counsel at Lieff Cabraser
Heimann & Bernstein, LLP's State Bar Attorney Client Trust account. Any payment of
attorneys' fees and expenses made pursuant to this Section shall be subject to the joint and
several obligation of Class Counsel to make refunds or repayments to Defendants of any paid
amounts if the Settlement fails to become effective for any reason, or if, as a result of any appeal
or further proceedings on remand or successful collateral attack, the award of attorneys' fees and
expenses is reduced or reversed by court order. Class Counsel shall make the appropriate refund

or repayment in full no later than 30 days after receiving notice of the termination of the Settlement, notice from a court of appropriate jurisdiction of the disapproval of the Settlement by court order, or notice of any reduction or reversal of the award of attorneys' fees and expenses by court order.

6.3    **Service Award.** As part of their motion seeking Final Approval, and in recognition of Plaintiff's work on behalf of the Class, Class Counsel will submit to the Court an application for a service award for Plaintiff. Class Counsel's request for Plaintiff's service award will not exceed $2,500, and Defendants agree to Plaintiff's service award in the amount awarded by the Court up to and including $2,500. If the service award approved by the Court is less than the amount sought by Class Counsel, this will not be a basis for setting aside this Settlement.

6.4    Defendants shall pay the service award within 30 days of Final Approval by wiring those funds to Class Counsel at Lieff Cabraser Heimann & Bernstein, LLP's State Bar Attorney Client Trust account.  Any payment of a service award made pursuant to this Section shall be subject to the obligation of Plaintiff to make refunds or repayments to Defendants of any paid amounts if the Settlement fails to become effective for any reason, or if, as a result of any appeal or further proceedings on remand or successful collateral attack, the service award is reduced or reversed by court order. Plaintiff shall make the appropriate refund or repayment in full no later than 30 days after receiving notice of the termination of the Settlement, notice from a court of appropriate jurisdiction of the disapproval of the Settlement by court order, or notice of any reduction or reversal of the service award by court order.

## 7.    TERMINATION

7.1    **Partial Refund.**  In the event that the Agreement is not approved or fails to become effective for any reason, the amounts paid into the Escrow Account, including accrued interest and less Administrative Expenses paid, incurred, or due and owing in connection with the Settlement as provided for herein, will be refunded to Defendants pursuant to written instructions from counsel for Defendants.

8.    **GENERAL PROVISIONS**

8.1    **Mutual Intent.**  The Settling Parties: (a) acknowledge that it is their intent to consummate this Agreement; and (b) agree to cooperate to the extent reasonably necessary to effectuate and implement all terms and conditions of the Agreement and to exercise their best efforts to accomplish such terms and conditions.

8.2    **Good Faith.**  The Settling Parties and their respective counsel agree that they will act in good faith and will not engage in any conduct that could frustrate the purposes of this Agreement.

8.3    **Ongoing Best Efforts to Effectuate.**  The Parties agree to make their best efforts on an ongoing basis to effectuate the Non-Economic Relief Measures provided for in this Agreement, as well as to defend this Agreement from any legal challenge by objection, appeal, collateral attack, or otherwise.

8.4    **No Waiver**.  The waiver by one Party of any breach of this Agreement will not be deemed to be a waiver of any prior or subsequent breach.  A Party's failure to exercise any rights under this Agreement shall not constitute waiver of that Party's right to exercise those rights later, except as expressly provided in this Agreement.  No delay by any Party in exercising any power or right under this Agreement will operate as a waiver of that power or right, nor will any single or partial exercise of any power or right under this Agreement preclude other or further exercises of that or any other power or right, except as expressly provided.

8.5    **Making Records and Information Available.**  Defendants have assisted and will continue to reasonably assist in the identification of all potential Class Members.  For purposes of clarification, however, and solely for use in assisting in the identification of potential Class Members, the University anticipates making available reasonably available information sufficient to identify the Class Members.

8.6    **Public Statements.**  The Settling Parties and their respective counsel will cooperate to ensure that any public statement concerning the Litigation and the Settlement by any Settling Party or his, her, or its counsel is accurate and consistent with the Parties' objective

- 14 -

of securing Court approval of the Settlement.  The Settling Parties and their respective counsel will not make any public statement that disparages the Settlement.

8.7      **Authority of Class Counsel.**  Class Counsel, on behalf of the Class, are expressly authorized to take all appropriate action required or permitted to be taken pursuant to the Agreement to effectuate its terms.  All Parties covenant and represent that they have consulted with competent counsel prior to entering into this Agreement.

8.8      **Final Resolution without Adjudication.**  The Settling Parties intend this Agreement to effect a final and complete resolution of all disputes and claims between Releasing Plaintiffs, on the one hand, and the Released Parties, on the other hand, with respect to the Released Claims.  The Settlement resolves claims which are contested and will not be deemed an admission by any Settling Party as to the merits of any claim or defense.  The Settling Parties agree that during the course of the Litigation, the Parties and their respective counsel have, to date, complied with the requirements of Federal Rule of Civil Procedure 11.  The Settling Parties agree that the terms of the settlement were negotiated in good faith by the Settling Parties and reflect a settlement that was reached voluntarily after consultation with competent legal counsel.

8.9      **No Admission of Liability.**  Neither this Agreement nor the settlement contained herein, nor any act performed or document executed pursuant to or in furtherance of the Agreement, (a) is or may be deemed to be or may be used as an admission of, or evidence of, the validity of any claim, the truth of any of the allegations of any wrongdoing, fault, or liability of Defendants, or that Plaintiff or any Class Members have suffered any injury, damages, harm, or loss, or (b) is or may be deemed to be or may be used as an admission of, or evidence of, any fault or omission on the part of Defendants in any civil, criminal, or administrative proceeding in any court, administrative agency, or other tribunal.

8.10    **No Court Findings on Liability.**  In agreeing to this Settlement, the Parties acknowledge that the Court has not made any findings or expressed any opinion concerning the merits, validity, or accuracy of any of the allegations, claims, or defenses in or relating to the Litigation.

8.11    **Use in Other Proceedings.**  The Parties will not introduce or use, or cause to be introduced or used, any provision in this Settlement, or any action taken in implementation thereof, or any statements, discussions, or communications, or any materials prepared, exchanged, issued, or used during the course of the Litigation or in negotiations leading to this Settlement, in this Litigation or in any other judicial, arbitral, administrative, investigative, or other proceeding of whatsoever kind or nature, as evidence of any violation or lack thereof; provided, however, that any Defendant may file this Agreement and/or the Final Order and Judgment in any other action that may be brought against it in order to support a defense or counterclaim based on principles of res judicata, collateral estoppel, release, good faith settlement, judgment bar or reduction, or any theory of claim or issue preclusion or similar defense or counterclaim.

8.12    **Survival of Confidentiality Agreements.**  All agreements made and orders entered during the course of the Litigation or negotiations leading to this Settlement relating to the confidentiality of information will survive this Agreement.

8.13    **Limitation on Amendment.**  The Agreement may be amended or modified only by a written instrument signed by or on behalf of all Settling Parties or their respective successors-in-interest.

8.14    **Governing Law.**  This Agreement and all Exhibits hereto will be considered to have been negotiated, executed, and delivered, and to be wholly performed, in the State of Michigan, and the rights and obligations of the Parties to the Agreement will be construed and enforced in accordance with, and governed by, the substantive laws of the State of Michigan.

8.15    **Neutral Construction.**  The determination of the terms and conditions contained herein and the drafting of the provisions of this Agreement have been by mutual understanding after negotiation, with consideration by, and participation of, the Settling Parties and their counsel.  This Agreement will not be construed against any Settling Party on the basis that the Settling Party was the drafter or participated in the drafting.  Any statute or rule of construction that ambiguities are to be resolved against the drafting party will not be employed in the implementation of this Agreement, and the Settling Parties agree that the drafting of this Agreement has been a mutual undertaking.

8.16    **Entire Agreement.**  The Agreement and the Exhibits attached hereto constitute the entire agreement among the Parties hereto, and no representations, warranties, or inducements have been made to any party concerning the Agreement or its Exhibits other than the representations, warranties, and covenants contained and memorialized in these documents.

8.17    **Exhibits Fully Integrated.**  All of the Exhibits to the Agreement are material and integral parts hereof and are fully incorporated herein by this reference.

8.18    **Severability.**  Except as otherwise provided in this Agreement, if any covenant, condition, term, or other provision in this Agreement is held to be invalid, void, or illegal, the same will be deemed severed from the remainder of this Agreement and will in no way affect, impair, or invalidate any other covenant, condition, term, or other provision in this Agreement. If any covenant, condition, term, or other provision in this Agreement is held to be invalid due to its scope or breadth, such covenant, condition, term, or other provision will be deemed valid to the extent of the scope or breadth permitted by law.

8.19    **Authority to Execute.**  Each counsel or other person executing the Agreement or any of its Exhibits on behalf of any party hereto warrants that such person has the full authority to do so.

8.20    **Execution in Counterparts.**  The Agreement may be executed in one or more counterparts.  All executed counterparts and each of them will be deemed to be one and the same instrument.  A complete set of executed counterparts will be filed with the Court.  Signatures sent by facsimile or sent in PDF form via e-mail will be deemed originals.

8.21    **No Prior Assignments**.  The Parties represent, covenant, and warrant that they have not directly or indirectly, assigned, transferred, encumbered, or purported to assign, transfer, or encumber to any person or entity any portion of any liability, claim, demand, action, cause of action, or that are rights released or discharged in this settlement except as set forth in this Agreement.

8.22    **Binding Upon Successors and Assigns.**  The Agreement will be binding upon, and inure to the benefit of, the successors and assigns of the Parties hereto.

Agreed to on the date indicated below.

APPROVED AND AGREED TO BY:

PLAINTIFF:

Executed this 23rd day of March, 2022

Signature: _Josephine Graham_____

Josephine Graham

PLAINTIFF'S COUNSEL:

Executed this 23rd day of March, 2022

Signature: _____

Jonathan D. Selbin
Annika K. Martin
Patrick I. Andrews
LIEFF CABRASER HEIMANN &
BERNSTEIN, LLP
250 Hudson Street, 8th fl.
New York, NY 10013
(212) 355-9500
Email: akmartin@lchb.com
Email: jselbin@lchb.com
Email: pandrews@lchb.com


E. Powell Miller
Sharon S. Almonrode
THE MILLER LAW FIRM, P.C.
950 W. University Dr., Suite 30
Rochester, MI 48307
(248) 843-0997
(248) 652-2852
Email: epm@millerlaw.com
Email: ssa@millerlawpc.com


Joseph G. Sauder
Lori G. Kier
SAUDER SCHELKOPF LLC
1109 Lancaster Avenue
Berwyn, PA 19312
(888) 711-9975
Email: jgs@sstriallawyers.com
Email: lgk@sstriallawyers.com

- 19 -

DEFENDANTS UNIVERSITY OF MICHIGAN and THE REGENTS OF THE UNIVERSITY
OF MICHIGAN:

Executed this 23rd day of March, 2022

Signature: _____

Timothy G. Lynch
Vice President and General Counsel
University of Michigan
Alexander G. Ruthven Building
1109 Geddes Avenue | Suite 2300
Ann Arbor, Michigan 48109-1079

Patricia Petrowski
Associate Vice President and Deputy General Counsel
University of Michigan
Alexander G. Ruthven Building
1109 Geddes Avenue | Suite 2300
Ann Arbor, Michigan 48109-1079

- 20 -

DEFENDANTS' COUNSEL:

Executed this 23rd day of March, 2022

Signature: _____

Matthew E. Papez
JONES DAY
51 Louisiana Avenue, N.W.
Washington, D.C. 20001
(202) 879-3939
mpapez@jonesday.com

Jack Williams
Jennifer L. Weizenecker
Holly M. Boggs
JONES DAY
1221 Peachtree Street, N.E.
Suite 400
Atlanta, GA 30361
(404) 521-3939
jmwilliams@jonesday.com

Stephen J. Cowen (P82688)
Amanda K. Rice (P80460)
Andrew J. Clopton (P80315)
JONES DAY
150 W. Jefferson Avenue
Suite 2100
Detroit, MI 48226
(313) 733-3939
scowen@jonesday.com

**EXHIBIT A**

**NON-ECONOMIC RELIEF MEASURES**

In continuation of its efforts to implement additional operating and oversight procedures for identification, prevention, and reporting of improper sexual conduct at the University of Michigan, the University shall establish a Coordinated Community Response Team ("CCRT"), as set forth below.

**I.        CCRT Structure and Membership**

The University of Michigan's CCRT will consist of Leadership and an Initial CCRT membership as defined below. The CCRT Co-Chairs and the CCRT itself may decide to add additional members or include additional individuals and entity representatives in various Working Groups organized by the CCRT.

The CCRT will have the authority and the duty to assess, plan, monitor, and evaluate campus prevention and response efforts at the University, and make official recommendations regarding the University's sexual misconduct prevention and response efforts, as detailed in Section II below.

The CCRT will meet as needed throughout the year, but no less than once a semester during the academic year, and once during the summer.

**A.        CCRT Leadership**

- ***Internal Administrator Co-Chair.*** Special Advisor to the President and Executive Director, Equity Civil Rights & Title IX ("ECRT")—currently Tamiko Strickman

- ***Internal Tenured Faculty Co-Chair.*** Tenured faculty member with expertise in sexual harassment, gender-based violence, and/or related subjects—initially, Prof. Sandra Levitsky.

- ***External Co-Chair.*** Rebecca Veidlinger, an external expert on sexual-misconduct prevention, will serve as the external co-chair for the first three years of the CCRT's existence. At or near the conclusion of that initial three-year period, the three CCRT co-chairs shall vote to determine whether to extend the external co-chair position for one additional year. Upon the conclusion of either the three-year period (if the CCRT co-chairs decide not to extend the external co-chair position) or the four-year period (if the CCRT co-chairs decide to extend the external co-chair position for an additional year),

the external co-chair position will expire and the two internal co-chairs will continue as the co-chairs.

**B.     Initial CCRT Members (in addition to Co-Chairs):**

- Sexual Assault Prevention and Awareness Center ("SAPAC") Director
- Representative from SAPAC (in addition to the SAPAC Director) to be selected by the SAPAC Director.
- Prevention, Education, Assistance & Resources ("PEAR") Director
- Professors Elizabeth Armstrong, Lilia Cortina, and Rich Tolman, all of whom are tenured faculty with expertise in sexual harassment, gender-based violence, and related subjects
- Dr. David Brown, Associate Vice President and Associate Dean for Health Equity and Inclusion and Associate Professor of Otolaryngology-Head and Neck Surgery
- One Faculty representative from Michigan Medicine, preferably with both teaching and clinical responsibilities and preferably with experience addressing issues related to sexual harassment and/or Diversity, Equity & Inclusion subjects
- One faculty or staff representative whose focus is on respondents' rights
- One faculty or staff representative each for the Dearborn and Flint campuses
- Michigan Medicine representative with expertise in sexual trauma (e.g. Sexual Assault Nurse Examiner or a Professor of Obstetrics and Gynecology)
- Survivor representative
- Center for the Education of Women ("CEW") representative
- Division of Public Safety & Security ("DPSS") representative (presumptively from University of Michigan Police Department's Special Victims Unit)
- Office of the Vice President and General Counsel ("OGC") representative
- Academic Human Resources representative
- Human Resources representative
- Student representatives (7 total)
  - The Central Student Government ("CSG") would appoint three representatives from among members of undergraduate and graduate student governments and

minority groups. In addition, Dearborn and Flint's Student Governments would appoint one student representative each.

- o   Graduate Student Union representative
- o   Spectrum Center student representative
- Title IX Coordinators for Ann Arbor, Dearborn, and Flint campuses
- Athletics representative
- SAPAC-affiliates for Dearborn and Flint (if no official affiliates, SAPAC director should identify staff on those campuses doing equivalent victim advocacy/services work on those campuses)
- Dean of Students' Respondent Support Program representative
- Washtenaw County Prosecutor's Office representative
- SafeHouse Center representative

### C.   Additional Representatives for potential CCRT and/or Working Group Membership

- Student Life Officer or delegate
- Dearborn Counseling Services representative
- Fraternity & Sorority Life ("FSL") representative
- Student Life representative
- Office of Student Conflict Resolution ("OSCR") representative
- Residence Life representative
- Counseling and Psychological Services ("CAPS") representative
- Faculty and Staff Counseling and Consultation Office ("FASCCO") representative
- Clery Compliance Coordinator
- Human Resources representative
- Staff Voice representative
- Title IX Advisory Committee representatives (Undergraduate, Graduate, Faculty, and Staff)
- Senate Advisory Committee on University Affairs ("SACUA") representative
- Flint Center for Gender and Sexuality representative
- Ann Arbor Police Department representative
- Sexual Assault Nurse Examiner ("SANE") representative (if not already on CCRT)

- University of Michigan-Dearborn Department of Public Safety representative
- University of Michigan-Flint Department of Public Safety representative
- Center for Research Learning and Teaching ("CRLT") representative
- Communications representative
- Faculty (tenured or contingent) with expertise in sexual harassment, gender-based violence, and related subjects.
- Other Flint/Dearborn representatives—TBD
- Flint and Dearborn Human Resources representatives

### D.    Initial Working Groups

The CCRT will create and task working groups to handle needed CCRT projects. The structure and purpose of those working groups will be decided by the CCRT.

### II.    Communication/Reporting Line

The CCRT's co-chairs will regularly communicate regarding policy, procedure, and practice changes to the President of the University and meet with the President to discuss the CCRT's ongoing efforts. The President will make every effort to be available to the co-chairs for meetings and/or to work with them to present recommendations to the Executive Officers when appropriate.

In addition, the CCRT will regularly provide public updates online concerning what it is doing, what it has found, and its recommendations regarding policy, procedure, and practice changes.

### III.    Budget and Recognition

The University will seek an appropriate budget for the CCRT, which will, at minimum, cover the cost of the External Co-Chair and a $10,000 annual discretionary fund. The CCRT Co-Chairs may make additional, one-time budget requests on an as-needed basis, and the University will reasonably consider those requests. The University will also seek other appropriate support for the CCRT.

The University recognizes that the Internal Tenured Faculty Co-Chair position may entail significant faculty time.  Accordingly, the University will provide compensation to Professor Levitsky pursuant to terms that the University has negotiated directly with Professor Levitsky.

The University also recognizes that other, non-chair members of the CCRT may expend significant time in connection with the CCRT's work.  Accordingly, the University will have

discretion to consider recognition of CCRT members' time and effort while serving in that capacity.

**IV.     Access to Information**

The CCRT Co-Chairs may make reasonable requests for information from the University to assist the CCRT's efforts. The University will cooperate reasonably with such requests, to the extent the requested information is reasonably available to the University and consistent with the law and University policy.

**V.     Duration of Agreement**

This agreement shall continue for a duration of five years from the date of Court approval.  Upon the expiration of the five-year duration, the University's obligations under this agreement shall expire.

**EXHIBIT B**

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

JOSEPHINE GRAHAM, on behalf of
herself and all others similarly
situated,

      Plaintiff,

v.

THE UNIVERSITY OF MICHIGAN,
and THE REGENTS OF THE
UNIVERSITY OF MICHIGAN,

      Defendants.

Case No. 2:21-cv-11168-VAR-EAS

Hon. Victoria A. Roberts
Magistrate Judge Elizabeth A.
Stafford

## [PROPOSED] ORDER GRANTING
## PRELIMINARY APPROVAL OF CLASS ACTION
## SETTLEMENT

Subject to Court approval, Plaintiff Josephine Graham ("Plaintiff" or "Class

Representative") and Defendants the University of Michigan and the Regents of

the University of Michigan ("UofM" or "Defendants") entered into a Settlement

Agreement dated March 23, 2022, in proposed settlement of this Action (together

with its exhibit, the "Agreement").

Application has been made for preliminary approval of the settlement set

forth in the Agreement (the "Settlement"), upon the terms and conditions in the Agreement. The Court has received and reviewed (1) the Agreement and exhibit attached thereto; (2) Plaintiff's Motion for Preliminary Approval of Settlement and supporting documents, including the proposed notice plan as described in the Declaration of Jennifer Keough and supporting documents, Plaintiff's declaration, Class Counsel's declarations, the declaration of Robert F. Riley, and the declaration of Nancy Chi Cantalupo; and (3) all other pleadings and matters of record.

The Court preliminarily considered the Settlement to determine, among other things, whether the Settlement is sufficient to warrant the issuance of notice to members of the Settlement Class (as defined below). Upon review of the Agreement, it is hereby ORDERED as follows:

Preliminary Approval of Proposed Settlement. The Court finds that it will likely be able to approve the Settlement Agreement under Federal Rule of Civil Procedure 23(e)(2) as fair, reasonable, and adequate. The Court furthermore finds that the Settlement Agreement: (a) resulted from extensive arm's-length negotiations between experienced counsel overseen by an experienced mediator; (b) eliminates the risks to the Settling Parties of continued litigation; (c) does not provide undue preferential treatment to Plaintiff or to segments of the Settlement Class; and (d) is sufficiently fair, reasonable, and adequate to warrant providing notice to the Settlement Class.

Class Certification for Settlement Purposes Only. Pursuant to Federal Rule

of Civil Procedure 23(c), the Court provisionally certifies, for settlement purposes only, the following Settlement Class:  all current students of the University of Michigan.

In connection with this provisional certification, the Court makes the following preliminary findings:

The Settlement Class appears to be so numerous that joinder of all members is impracticable;

There appear to be questions of law or fact common to the Settlement Class for purposes of determining whether this settlement should be approved;

Plaintiff's claims appear to be typical of the claims being resolved through the proposed settlement;

Plaintiff appears to be capable of fairly and adequately protecting the interests of all members of the Settlement Class in connection with the proposed settlement;

For purposes of settlement only, Defendants have acted or refused to act on grounds that apply generally to the Settlement Class, so that final non-economic relief is appropriate respecting the Settlement Class as a whole.

<u>Class Representative</u>. Plaintiff is designated as class representative.

<u>Class Counsel</u>. The Court appoints Lieff Cabraser Heimann & Bernstein, LLP; The Miller Law Firm, P.C.; and Sauder Schelkopf LLC as Class Counsel. The Court finds that counsel is competent and capable of exercising all responsibilities as Class Counsel for the Settlement Class.

<u>Settlement Hearing</u>. A final approval hearing (the "Settlement Hearing") shall be held before the Hon. Victoria A. Roberts of the Eastern District of Michigan, located at 231 W. Lafayette Blvd., Detroit, Michigan, Courtroom 252, on _____, 2022, at _____am/pm, as set forth in the notice to the Settlement

Class (described in Paragraph 7 below), to determine whether the Settlement is fair, reasonable, and adequate and should be approved. Papers in support of final approval of the Settlement, the service award to Plaintiff, and Class Counsel's application for an award of attorneys' fees, costs, and expenses (the "Fee Application") shall be filed with the Court according to the schedule set forth in Paragraph 7 below. The Settlement Hearing may be postponed, adjourned, or continued by order of the Court without further notice to the Settlement Class. After the Settlement Hearing, the Court may enter a settlement order and final judgment in accordance with the Settlement Agreement that will adjudicate the rights of the Settlement Class Members with respect to the Released Claims being settled.

Class Notice. Class Notice shall be sent within twenty eight (28) days following entry of this Order.

Mail and E-mail Notice. The Notice Provider shall provide individual notice via U.S. mail to all persons in the Settlement Class for which Defendants have contact information and via email to the extent the Notice Provider is able to obtain the electronic mail addresses of Settlement Class Members.

Digital Notice. By the Settlement Notice Date, the Notice Provider will design and publish a cost-effective digital notice program designed to reach members of the Settlement Class.

Website Notice. By the Settlement Notice Date, the Notice Provider shall maintain and administer a dedicated Settlement Website containing class information and related documents, along with information about the Settlement. Such documents shall include the Settlement Agreement and Exhibit, the Settlement Notice, the Preliminary Approval Order, the operative complaint in the Action, and when filed, the Final Approval Order.

Toll Free Telephone Number. The Notice Provider shall set up a toll-free telephone number for receiving toll-free calls related to the settlement.

Findings Concerning Class Notice. The Court finds that the foregoing program of Class Notice and the manner of its dissemination is sufficient under the circumstances and is reasonably calculated to apprise the Settlement Class of the pendency of this Action and their right to object to the Settlement.  The Court further finds that the Class Notice program is reasonable, that it constitutes due, adequate, and sufficient notice to all persons entitled to receive notice, and that it meets the requirements of due process and Federal Rule of Civil Procedure 23.

Objections to the Settlement.

Right to Object. Any Settlement Class Member may appear at the Final Approval Hearing to object to the proposed settlement and/or to the application of Class Counsel for an award of attorneys' fees and costs and/or the service awards, but only if the Settlement Class Member has first filed a Notice of Intent to Appear containing a written objection with the Clerk of Court, in accordance with the "Objection Requirements" set forth below, by the Objection Deadline. Any Settlement Class Member who does not provide a written objection in the manner described below shall be deemed to have waived any objection and shall forever be foreclosed from making any objection to the fairness, reasonableness, or adequacy of the proposed Settlement or the award of any attorneys' fees and/or service awards.

Objection Requirements. In the written objection, the Settlement Class Member must state his or her name, address, and telephone number, as well as the name, address, and telephone number of any person that may appear on behalf of the Settlement Class Member, the reasons for the Settlement Class Member's objection, and whether he or she intends to appear at the fairness hearing on his or

- 5 -

her own behalf or through counsel. Any documents supporting the objection must also be attached to the Objection.

Stay. Upon the Court's entry of this Order, all further proceedings in this lawsuit (including, but not limited to, Defendants' pending motion to dismiss) shall be stayed pending Final Settlement Approval or termination of the Settlement Agreement, whichever occurs earlier, except for those matters necessary to obtain and/or effectuate the Final Settlement Approval.

Schedule of Future Events. Further settlement proceedings in this matter shall proceed according to the following schedule:

28 calendar days of entry of this Order:  Deadline to provide Class Notice (the "Class Notice Date"), _____, 2022;

30 calendar days after Class Notice Date: Deadline for Plaintiff to file Final Approval Motion and Attorneys' Fees Motion, _____, 2022;

60 calendar days after the Class Notice Date:  Last day to Object, _____, 2022;

75 calendar days after Class Notice Date: Deadline for Plaintiff to file response to any Objections, _____, 2022; and

_____, 2022 at _____ a.m./p.m.:  Final Approval Hearing.


Dated: _____          _____
                            Honorable Victoria A. Roberts
                            United States District Judge