## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

JOSEPHINE GRAHAM, on behalf of
herself and all others similarly
situated,

Plaintiff,

v.

THE UNIVERSITY OF MICHIGAN,
and THE REGENTS OF THE
UNIVERSITY OF MICHIGAN,

Defendants.

Case No. 2:21-cv-11168-VAR-EAS

Hon. Victoria A. Roberts
Magistrate Judge Elizabeth A.
Stafford

## PLAINTIFF'S UNOPPOSED MOTION
## FOR FINAL APPROVAL OF SETTLEMENT

For the reasons stated in the attached Memorandum in Support, and
supporting declarations and exhibits, Plaintiff, through her counsel, moves the
Court to:

1. Grant final approval to the Settlement Agreement, ECF No. 27-2
   ("Settlement Agreement"), under Federal Rule of Civil Procedure 23;

2. Certify the Settlement Class set forth in the Settlement Agreement under
   Federal Rule of Civil Procedure 23(a) and 23(b)(2);

3. Appoint Plaintiff as Class Representative for the Settlement Class;

4.   Appoint the firms Lieff Cabraser Heimann & Bernstein, LLP, The Miller

Law Firm, P.C., and Sauder Schelkopf LLC as Class Counsel under

Federal Rule of Civil Procedure 23(g) for the Settlement Class.

Pursuant to Local Rule 7.1, Plaintiff sought consent in this Motion from

Defendants, and Defendants do not object to the relief requested.

Dated: May 26, 2022                    Respectfully submitted,

                                       */s/ E. Powell Miller*
                                       E. Powell Miller (P39487)
                                       Sharon S. Almonrode (P33938)
                                       THE MILLER LAW FIRM, P.C.
                                       950 W. University Dr., Suite 30
                                       Rochester, MI 48307
                                       (248) 843-0997
                                       (248) 652-2852
                                       Email: epm@millerlaw.com
                                       Email: ssa@millerlawpc.com

                                       Jonathan D. Selbin
                                       Annika K. Martin
                                       Patrick I. Andrews
                                       LIEFF CABRASER HEIMANN &
                                       BERNSTEIN, LLP
                                       250 Hudson Street, 8th fl.
                                       New York, NY 10013
                                       (212) 355-9500
                                       Email: akmartin@lchb.com
                                       Email: jselbin@lchb.com
                                       Email: pandrews@lchb.com

-2-

Joseph G. Sauder
Lori G. Kier
SAUDER SCHELKOPF LLC
1109 Lancaster Avenue
Berwyn, PA 19312
(888) 711-9975
Email: jgs@sstriallawyers.com
Email: lgk@sstriallawyers.com

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

JOSEPHINE GRAHAM, on behalf of
herself and all others similarly
situated,

                Plaintiff,

                v.

THE UNIVERSITY OF MICHIGAN,
and THE REGENTS OF THE
UNIVERSITY OF MICHIGAN,

                Defendants.

Case No. 2:21-cv-11168-VAR-EAS

Hon. Victoria A. Roberts
Magistrate Judge Elizabeth A.
Stafford

## PLAINTIFF'S MEMORANDUM IN SUPPORT OF
## FINAL APPROVAL OF SETTLEMENT

# **TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION ................................................................1

II.   BACKGROUND AND SETTLEMENT SUMMARY .................................3

    A.   Procedural History..................................................3

        1.   The Related Survivor Class Action ...........................3

        2.   Pleadings and Motion to Dismiss ............................4

    B.   Extensive Information Gathering and Negotiations...........................5

    C.   Summary of the Settlement ....................................5

    D.   Preliminary Approval ..........................................8

III.  THE SETTLEMENT MERITS FINAL APPROVAL. .................................9

    A.   The Class Has Been Vigorously Represented....................................10

    B.   The Parties Negotiated Settlement at Arm's Length Under the Auspices of an Experienced, Neutral Mediator. .................................13

    C.   The Settlement Provides Meaningful Relief to the Class. .................14

        1.   The Costs, Risks, and Delay of Trial and Appeal...................15

        2.   Class Counsel Seek Reasonable Attorneys' Fees and Expenses and a Reasonable Service Award for Graham.........17

    D.   The Settlement Treats Class Members Equitably. .............................18

    E.   The Sixth Circuit's Additional Factors Support Approval. ..............18

IV.   CLASS CERTIFICATION IS APPROPRIATE. ........................................20

    A.   Rule 23(a) is Satisfied. ......................................21

        1.   The Settlement Class Meets the Numerosity Requirement. ...........................................21

        2.   Factual and Legal Questions are Common. ..........................22

        3.   Graham's Claims Are Typical of Settlement Class Members' Claims.........................................23

        4.   The Settlement Class's Interests are Protected.........................24

    B.   The Settlement Class Meets the Requirements of Rule 23(b)(2). .....26

# TABLE OF CONTENTS
## (CONTINUED)

**Page**

V.    CONCLUSION.................................................................................28

# TABLE OF AUTHORITIES

**Page**

## Cases

*Arledge v. Domino's Pizza, Inc.*,
   2018 WL 5023950 (S.D. Ohio Oct. 17, 2018) ....................................................14

*Avio, Inc. v. Alfoccino, Inc.*,
   311 F.R.D. 434 (E.D. Mich. 2015)...................................................................21

*Bacon v. Honda of Am. Mfg., Inc.*,
   370 F.3d 565 (6th Cir. 2004) ..........................................................................22

*Beattie v. CenturyTel, Inc.*,
   234 F.R.D. 160 (E.D. Mich. 2006), *aff'd in part, remanded on other
   grounds*, 511 F.3d 554 (6th Cir. 2007)........................................................ 22, 24

*Cates v. Cooper Tire & Rubber Co.*,
   253 F.R.D. 422 (N.D. Ohio 2008).....................................................................24

*Cole v. City of Memphis*,
   839 F.3d 530 (6th Cir. 2016) ...........................................................................27

*Daffin v. Ford Motor Co.*,
   458 F.3d 549 (6th Cir. 2006) ...........................................................................22

*Daoust v. Maru Rest., LLC*,
   17-cv-13879, 2019 WL 1055231 (E.D. Mich. Feb. 2, 2019).............................21

*Daoust v. Maru Rest., LLC*,
   2019 WL 2866490 (E.D. Mich. July 3, 2019).....................................................18

*Davidson v. Henkel*,
   302 F.R.D. 427 (E.D. Mich. 2014)...................................................................21

*Doe #1 by Parent #1 v. New York City Dep't of Educ.*,
   No. 16-cv-1684, 2018 WL 3637962 (E.D.N.Y. July 31, 2018)...........................13

*Does 1-2 v. Deja Vu Services, Inc.*,
   925 F.3d 886 (6th Cir. 2019) ...................................................................... 12, 20

*Dozier v. Haveman*,
   2:14-cv-12455, 2014 WL 5483008 (E. D. Mich. Oct. 29, 2014).........................27

*Garner Props. & Mgmt., LLC v. City of Inkster*,
   333 F.R.D. 614 (E.D. Mich. 2020)................................................ 13, 20, 21, 24

# TABLE OF AUTHORITIES
## (continued)

**Page**

*In re Cardizem CD Antitrust Litig.*,
  218 F.R.D. 5080 (E.D. Mich. 2003).....................................................20

*In re Corrugated Container Antitrust Litig.*,
  643 F.2d 195 (5th Cir. 1981)...............................................................13

*In re Delphi Corp. Sec., Derivative & "ERISA" Litig.*,
  248 F.R.D. 483 (E.D. Mich. 2008)............................................... 16, 25

*In re District of Columbia*,
  792 F.3d 96 (D.C. Cir. 2015)................................................................27

*In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*,
  722 F.3d 838 (6th Cir. 2013)................................................................22

*IUE-CWA v. Gen. Motors Corp.*,
  238 F.R.D. 583 (E.D. Mich. 2006).......................................................16

*Malam v. Adducci*,
  475 F. Supp. 3d 721 (E.D. Mich. 2020), *amended*, 20-10829, 2020 WL
  4818894 (E.D. Mich. Aug. 19, 2020)....................................................27

*N.Y. State Teachers' Ret. Sys. v. Gen. Motors Co.*,
  315 F.R.D. 226 (E.D. Mich. 2016)........................................... 11, 12, 14

*Peoples v. Annucci*,
  180 F. Supp. 3d 294 (S.D.N.Y. 2016).....................................................9

*Powers v. Hamilton Cnty. Pub. Defender Comm'n*,
  501 F.3d 592 (6th Cir. 2007)................................................................23

*Puerto Rico Aqueduct and Sewer Auth. v. Metcalf & Eddy, Inc.*,
  506 U.S. 139 (1993) ............................................................................16

*Rikos v. P&G*,
  799 F.3d 497 (6th Cir. 2015)................................................................23

*Sheick v. Auto. Component Carrier LLC*,
  No. 09-cv-14429, 2010 WL 4136958 (E.D. Mich. Oct. 18, 2010)......................14

*Sterling v. Velsicol Chem. Corp.*,
  855 F.2d 1188 (6th Cir. 1988)..............................................................23

# TABLE OF AUTHORITIES
## (continued)

**Page**

*Town of Smyrna v. Mun. Gas Auth. of Ga.*,
  723 F.3d 640 (6th Cir. 2013) .................................................................16

*UAW v. Ford Motor Co.*,
  2006 WL 1984363 (E.D. Mich. July 13, 2006)....................................16

*UAW v. Ford Motor Co.*,
  2008 WL 41043296 (E.D. Mich. Aug. 29, 2008) ................................19

*UAW v. Gen. Motors Corp.*,
  497 F.3d 615 (6th Cir. 2007)....................................................... passim

*Wal-Mart Stores, Inc. v. Dukes*,
  564 U.S. 338 (2011) ...........................................................................22

*Yates v. Collier*,
  868 F.3d 354 (5th Cir. 2017).................................................................27

*Young v. Nationwide Mut. Ins. Co.*,
  693 F.3d 532 (6th Cir. 2012)................................................................24

## Rules

Fed. R. Civ. P. 23 .............................................................. passim

## Other Authorities

4 William B. Rubenstein, *Newberg on Class Actions* § 13:44 (5th ed. 2014) .........9

## CONTROLLING OR MOST APPROPRIATE AUTHORITY

- Federal Rule of Civil Procedure 23

- *UAW v. Gen. Motors Corp.*, 497 F.3d 615 (6th Cir. 2007)

- *In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, 722 F.3d 838 (6th Cir. 2013)

## **STATEMENT OF ISSUES PRESENTED**

1.      Should the Court approve the class Settlement under Federal Rule of Civil Procedure 23?

Answer: Yes

2.      Should the Court certify the Settlement Class under Federal Rule of Civil Procedure 23(a) and (b)(2)

Answer: Yes

3.      Should the Court appoint Plaintiff Josephine Graham as Class Representative?

Answer: Yes

4. Should the Court appoint the firms Lieff Cabraser Heimann & Bernstein, LLP, The Miller Law Firm, P.C., and Sauder Schelkopf LLC as Class Counsel under Federal Rule of Civil Procedure 23(g) to represent the Settlement Class?

Answer: Yes

I.    **INTRODUCTION**

Pursuant to Rule 23 of the Federal Rules of Civil Procedure and the Court's

March 29, 2022, Order Granting preliminary approval, Plaintiff Josephine Graham

respectfully requests that the Court grant final approval to the Class Action

Settlement Agreement (the "Settlement")[1] as fair, reasonable, and adequate and

certify the Settlement Class.[2] ECF No. 36.

As noted in Plaintiff's briefing in support of preliminary approval, this

Action has its genesis in the history of allegations involving Dr. Robert Anderson's

decades-long sexual abuse of student (and other) patients while employed as a

physician at the University of Michigan ("UofM"). The Court is well familiar with

that history, which is the subject of a proposed class action and many related

individual complaints. *See Doe MC-1 v. The University of Michigan*, 2:20-cv-

10568 (Master Case Docket). But while survivors of Dr. Anderson bring those

cases, this case was brought by Ms. Graham, a current UofM student, and looks to

the present and future and seeks institutional reforms to ensure that something like

this can never happen again at UofM.

After a year and a half of intensive, arm's length, and good-faith mediation

overseen by the Court-appointed mediator, Robert F. Riley, the Settlement

---

[1] The Settlement Agreement is at ECF No. 27-2.
[2] The Settlement Class is defined as all current students of the University of
Michigan. ECF No. 36, PageID.1610.

achieves an outstanding result that requires UofM to implement expert-crafted best-practices institutional reforms to prevent the sort of abuses committed by Anderson from happening again at UofM. *See* ECF No. 27, PageID.657.

The Settlement's key feature, informed by the extensive involvement of leading experts retained by Class Counsel, is the creation of a Coordinated Community Response Team ("CCRT") at UofM—a best practice approach to addressing issues of campus sexual violence. This committee includes a balanced leadership structure with external and faculty oversight, a membership made up of key campus and community stakeholders, and a commitment to regularly communicate to the University community regarding its work to provide accountability through transparency. *See* ECF No. 27, PageID.658.

The Settlement satisfies the requirements for final approval. It is an outstanding result that achieves this litigation's central goal of ensuring meaningful institutional change at UofM via implementation of best-practices institutional reform with external oversight. It balances the need for timely institutional reform with the many risks of further litigation. It is reached on behalf of Ms. Graham and a class of all current UofM students. Importantly, no Class Members will release any monetary claims. The Settlement is well informed by comprehensive information gathering and in consultation with field-leading experts.

At preliminary approval, the Court found it "will likely be able to approve the Settlement Agreement under Federal Rule of Civil Procedure 23(e)(2) as fair, reasonable, and adequate" and that provisional certification of the Settlement Class was appropriate. ECF No. 36, PageID.1609-1610. Accordingly, the parties fully implemented the Court-approved Notice Program, which included direct notice to Settlement Class Members with all the information required to ensure Settlement Class members are effectively notified of the Settlement. Selbin Decl. at ¶ 28. To date, there have been *no objections* filed with the Court or received by the Settlement Administrator. *Id.*

For all these reasons, Ms. Graham and her counsel submit that the Settlement is not just fair, reasonable, and adequate—it is an outstanding result for the Class. Ms. Graham respectfully requests that the Court grant final approval and certify the Settlement Class.

## II.   BACKGROUND AND SETTLEMENT SUMMARY

### A.   Procedural History

#### 1.   The Related Survivor Class Action

This action follows a related class action filed on March 9, 2020, on behalf of Anderson survivors (the "Survivor Class"), seeking monetary and equitable relief under Title IX of the Educational Amendments of 1972, 20 U.S.C. § 1681, *et seq.* ("Title IX"). 2:20-cv-10629 ECF No. 1 (the Survivor Class Action Complaint). To facilitate resolution, the parties stipulated to a stay of discovery

-3-

aside from limited materials (2:20-cv-10568 ECF No. 48) and to the appointment

of a facilitative mediator, Robert F. Riley (2:20-cv-10568 ECF No. 53). On

September 30, 2020, UofM moved to dismiss the Survivor Class Action, arguing,

*inter alia*, that former UofM students lack standing to seek equitable relief. *See*

2:20-cv-10629 ECF No. 1 (UofM's Motion to Dismiss the Survivor Class Action

Complaint). The Court ordered UofM to withdraw its motion (without prejudice)

and compelled the parties to submit all legal issues to Mr. Riley for facilitation.

2:20-cv-10629 ECF No. 37, PageID.496-498 (Stipulated Order Withdrawing

UofM's Motion to Dismiss).

### 2. <u>Pleadings and Motion to Dismiss</u>

On May 20, 2021, Graham filed her Class Action Complaint against UofM,

seeking equitable relief under Title IX on behalf of herself and a proposed class of

"All current U of M students" (the "Settlement Class"). ECF No. 1. Soon

thereafter, UofM filed a motion to dismiss Plaintiff's Class Action Complaint,

arguing that Graham failed to state a claim under Title IX, that her claims are

barred by legislative and sovereign immunity, that UofM is an improper party, and

that Graham lacks standing to seek equitable relief without alleging she suffered

sexual misconduct. *See* ECF No. 7. Graham opposed, and the motion was fully

briefed on August 15, 2021. *See* ECF Nos. 19 and 24. In a good-faith effort to

negotiate relief, the parties agreed to numerous adjournments of UofM's motion. However, UofM's motion remains pending.

## B.    **Extensive Information Gathering and Negotiations**

Given the parties' focus on early and impactful resolution, Class Counsel thoroughly investigated UofM's historic and current policies and procedures relating to the prevention of and proper response to campus sexual violence. Selbin Decl. ¶¶ 41-43. Class Counsel's aim was to gather the information necessary to be fully informed and knowledgeable in negotiating a settlement on behalf of the Class; and Class Counsel did so throughout 17 months of mediation, with the close supervision and involvement of Mr. Riley. *See, e.g.*, Selbin Decl. ¶ 41; ECF No. 34 ¶¶ 5-9, PageID.1602-1603; *see also* ECF No. 27, PageID.661-662 (describing Class Counsel's efforts).

Together, these efforts ensured Class Counsel's negotiation of equitable relief was well informed and focused on achieving the best practicable reforms at UofM.

## C.    **Summary of the Settlement**

The Settlement creates major institutional reform to ensure that UofM will implement best practices for the comprehensive prevention of and response to

campus sexual violence.[3] The Settlement's key feature is the creation of a CCRT. *See* "Settlement Agreement" ECF No. 27-2.

A CCRT is a multidisciplinary standing committee composed of local community and campus stakeholders that provides a collaborative approach to preventing and responding to campus sexual violence. ECF No. 33 ¶ 13, PageID.1506-1507. CCRTs are recognized by experts on sexual misconduct prevention as an indispensable tool to achieve comprehensive prevention of campus sexual violence. *Id.* ¶ 19, PageID.1509; *see* ECF No. 27, PageID.663.

UofM's CCRT will have the authority and duty to assess, plan, monitor, and evaluate campus sexual abuse prevention and response efforts at UofM and help develop University-wide policies and procedures to protect students and foster a campus culture that works to prevent and properly respond to sexual violence on campus. ECF No. 27-2, PageID.715-719. It will also help UofM maintain transparency and accountability with the campus community through regularly providing public updates online concerning what it is doing, what it has found, and its recommendations regarding policy, procedure, and practice changes. *Id.*; *see* ECF No. 33 ¶ 35 PageID.1515 (explaining the importance of transparency).

---

[3] Consistent with Rule 23(b)(2) injunctive relief settlements, no Settlement Class members will release any monetary claims.

UofM's CCRT will include select members of the administration and faculty, students, survivors, and community members, with a balanced three co-chair leadership structure, including an independent expert. *See* ECF No. 27-2, PageID.715-719; *see also* ECF No. 27, PageID.664-665 (explaining co-chair structure and compensation). Informed by the independence and expertise of the External Co-Chair, the three co-chairs will be responsible for administering the CCRT's work, establishing CCRT processes and procedures, overseeing communications to and from the CCRT, steering the CCRT's work, and ensuring timely completion of tasks. ECF No. 27-2, PageID.715-719. The CCRT co-chairs will also be responsible for escalating concerns and making policy and practice recommendations to campus leadership. *Id.* The co-chairs will regularly communicate with the President regarding policy, procedure, and practice changes and meet with the President to discuss the CCRT's ongoing efforts. *Id.*

Beyond the co-chairs, CCRT membership will include a broad range of stakeholders, ranging from those who work closely with survivors as well as people who are in policymaking positions. *See* ECF No. 33 ¶ 31, PageID.1513-1514 (explaining proper CCRT membership structure). Members will form working groups as appropriate, which may include additional campus and community representatives who are not CCRT members. ECF No. 27-2, PageID.715-719. The CCRT will also have the flexibility and independence to

adapt its membership and structure as needed by adding additional members or including additional individuals and entity representatives in various working groups. *Id.*

The CCRT will convene as needed throughout the year, but no less than once a semester during the academic year, and once during the summer. *Id.* The CCRT will exist for a minimum of five years from the date of final Court approval, but UofM may continue to operate the CCRT indefinitely thereafter. *Id.*

### D.   <u>Preliminary Approval</u>

On March 24, 2022, Graham moved for preliminary approval of the Settlement, provisional certification of the Settlement Class, appointment as Class Representative, appointment of Class Counsel as counsel for the Settlement Class, and direction of class notice. ECF No. 27. The Court granted that motion on March 29, 2022, finding that the Settlement will likely merit final approval as fair, reasonable, and adequate. ECF No. 36, PageID.1608. The Court further found that the Settlement: "(a) resulted from extensive arm's-length negotiations between experienced counsel overseen by an experienced mediator; (b) eliminates the risks to the Settling Parties of continued litigation; [and] (c) does not provide undue preferential treatment to Plaintiff or to segments of the Settlement Class[.]" *Id.* The Court thus directed notice to the Settlement Class, scheduled a Final Approval

hearing for July 26, 2022, and set a June 27, 2022 deadline to object. *Id.* at PageID.1611-1614.

## III.   <u>THE SETTLEMENT MERITS FINAL APPROVAL.</u>

Federal courts favor and encourage settlements as a matter of public policy, particularly in class actions, where the costs, delays, and risks of continued litigation might otherwise overwhelm any potential benefit the class could hope to claim. *See UAW v. Gen. Motors Corp.*, 497 F.3d 615, 632 (6th Cir. 2007) (noting "the federal policy favoring settlement of class actions"); *see also* 4 William B. Rubenstein, *Newberg on Class Actions* § 13:44 (5th ed. 2014) (noting that the law favors settlement "particularly in class actions" and collecting cases). This is even more so where, as here, the case concerns an alleged failure to implement adequate practices and policies, and "[a] settlement is vastly superior to a litigated outcome, which would [be] a non-consensual process not likely to result in an improved attitude or atmosphere[.]" *Peoples v. Annucci*, 180 F. Supp. 3d 294, 308 (S.D.N.Y. 2016) (approving class action settlement in litigation challenging prison's solitary confinement practices).

After preliminary approval, Federal Rule of Civil Procedure 23 requires final evaluation of a proposed class action settlement. Fed. R. Civ. P. 23(e)(2). At this stage, the Court must determine whether to approve the settlement as fair, reasonable, and adequate. *Id.* In determining whether a class action settlement is

fair, reasonable, and adequate, courts consider whether (1) the proposed Class

Representatives and Class Counsel have adequately represented the class; (2) the

Settlement was negotiated at arm's length; (3) the relief provided is adequate; and

(4) the Settlement treats class members equitably relative to each other. *Id.*

In recently amending Rule 23, the Advisory Committee recognized that

various Circuits had independently generated their own lists of factors to consider

in determining whether a settlement is fair, reasonable, and adequate.[4] Fed. R. Civ.

P. 23(e)(2) advisory committee's note to the 2018 amendment. Because the Sixth

Circuit factors are similar, case law in this Circuit applying those factors remains

instructive here. That said, following the instructions of the Advisory Committee,

Plaintiff will "present the settlement to the court in terms of a shorter list of core

concerns, by focusing on the primary procedural considerations and substantive

qualities that should always matter to the decision whether to approve the

proposal." *Id.* As detailed below, the Settlement merits final approval.

### A.   <u>The Class Has Been Vigorously Represented.</u>

Rule 23(e)(2) first asks whether "the class representatives and class counsel

have adequately represented the class." Fed. R. Civ. P. 23(e)(2)(A). Relevant

---

[4] In the Sixth Circuit, those factors are: (1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest. *UAW*, 497 F.3d at 631.

considerations include the information available to counsel negotiating the

settlement, the stage of the litigation, and the amount of discovery taken. Fed. R.

Civ. P. 23(e)(2) advisory committee's note to the 2018 amendment.[5] The parties

need not unearth every last fact of a case before they can settle it; rather, they must

learn as much as necessary to ensure that claims are not settled prematurely. *See*

*N.Y. State Teachers' Ret. Sys. v. Gen. Motors Co.*, 315 F.R.D. 226, 237 (E.D.

Mich. 2016) (class settlement appropriate where the parties "had sufficient

information to evaluate the strengths and weaknesses of the case and the merits of

the Settlement").

From the outset, Anderson's misconduct was widely reported in a number of

in-depth investigative news articles—many of which included statements from

Anderson's patients, co-workers, and UofM administrators.[6] The WilmerHale

Report detailed UofM's failure to prevent Anderson's sexual misconduct, as well

as areas where UofM's policies fell short. ECF Nos. 27-4 and 27-5. Against that

backdrop, reaching a fair, informed resolution of this case principally required a

clear understanding of UofM's past and current cultural and systemic responses to

---

[5] Similarly, under the Sixth Circuit factors courts look to the amount of discovery engaged in by the parties. *See UAW*, 497 F.3d at 631.

[6] *See*, Kim Kozlowski, Alum Says He Told UM Of Doctor's Sex Abuse In '68 But Never Got A Response, THE DETROIT NEWS (last visited May 25, 2022), https://www.detroitnews.com/story/news/local/michigan/2020/02/20/alum-sayshe-told-university-michigan-about-doctor-sex-abuse/4817480002/ (ECF No. 28-3).

sexual abuse on campus.

Class Counsel vigorously investigated the facts and allegations here, reviewed volumes of information on UofM's historic and current policies and procedures on prevention of and response to sexual assault, and retained field-leading experts with whom Class Counsel worked closely. Selbin Decl. ¶¶ 47-48.

Armed with that knowledge, Class Counsel drafted a detailed Class Action complaint, extensively briefed UofM's motion to dismiss, and negotiated terms of relief over the course of nearly 17 months with the extensive involvement of their experts and an experienced mediator, Mr. Riley. *Id.* at ¶ 37; ECF No. 34 ¶¶ 5-9, PageID.1602-1603. As a result, the parties reached an informed decision based on the seriousness and scope of the claims and issues, and the diligent work of the Court, the parties, their counsel, experts, and the mediator. *See N.Y. State Teachers' Ret. Sys.*, 315 F.R.D. at 237 (class settlement appropriate where counsel drafted a detailed complaint, prepared extensive briefing in response to a motion to dismiss, reviewed large volumes of documents, and consulted with relevant experts).

Conversely, proceeding with discovery in this case would require additional expenditure of time and expense, with little to no added benefit, and unnecessarily delay the important relief the Settlement provides the Settlement Class. *See Does 1-2 v. Deja Vu Services, Inc.*, 925 F.3d 886, 898 (6th Cir. 2019) ("settlements are

-12-

permissible where, 'notwithstanding the status of discovery, plaintiffs' negotiators ha[ve] access to a plethora of information regarding the facts of their case.'" (quoting *In re Corrugated Container Antitrust Litig.*, 643 F.2d 195, 211 (5th Cir. 1981))); *Doe #1 by Parent #1 v. New York City Dep't of Educ.*, 2018 WL 3637962, at *11 (E.D.N.Y. July 31, 2018) (approving settlement where the parties "did not engage in formal discovery" yet counsel "nonetheless conducted a thorough investigation," including reviewing documents and consulting with an expert). This factor weighs in favor of approval.

### B.   The Parties Negotiated Settlement at Arm's Length Under the Auspices of an Experienced, Neutral Mediator.

Rule 23(e)(2) next asks whether the settlement "was negotiated at arm's length." Fed. R. Civ. P. 23(e)(2)(B). To ensure negotiations were conducted at arm's length, courts look to the "conduct of the negotiations," recognizing that "the involvement of a neutral or court-affiliated mediator or facilitator in those negotiations may bear on whether they were conducted in a manner that would protect and further the class interests." Fed. R. Civ. P. 23(e)(2) advisory committee's note to the 2018 amendment. Indeed, courts recognize that negotiations facilitated by a neutral party are persuasive evidence of fair settlements. *See Garner Props. & Mgmt., LLC v. City of Inkster*, 333 F.R.D. 614, 627 (E.D. Mich. 2020) (noting "[t]he negotiations of the Settlement Agreement were conducted at arms-length by adversarial parties and experienced counsel,

-13-

with facilitative assistance from Judge Roberts."); *see also Arledge v. Domino's Pizza, Inc.*, 2018 WL 5023950, at *2 (S.D. Ohio Oct. 17, 2018) (the "participation of an independent mediator in settlement negotiations virtually insures that the negotiations were conducted at arm's length and without collusion").

As described above, and as the Court previously found, the Settlement "resulted from extensive arm's-length negotiations between experienced counsel overseen by an experienced mediator." ECF No. 36, PageID.1609; *see also*, Selbin Decl. ¶ 39; ECF No. 34 ¶¶ 5-9, PageID.1602-1603. Settlement was reached only after the parties engaged in a hard-fought, good-faith negotiation process, spanning 17 months, with the determined involvement of the parties, the mediator, experts, and the Court. Selbin Decl. ¶ 39; ECF No. 34 ¶¶ 5-9. Separately, the Settlement bears none of the traditional signs of collusion. *See N.Y. State Teachers' Ret. Sys.*, 315 F.R.D. at 236 ("[C]ourts presume the absence of fraud or collusion in class action settlements unless there is evidence to the contrary." (quoting *Sheick v. Auto. Component Carrier LLC*, 2010 WL 4136958, at *19 (E.D. Mich. Oct. 18, 2010))). This factor likewise supports approval.

### C.   The Settlement Provides Meaningful Relief to the Class.

The next factor under Rule 23(e)(2) asks whether "the relief provided for the class is adequate." Fed. R. Civ. P. 23(e)(2)(C). Here, the relief provided to the Class under the Settlement is outstanding, especially considering "the costs, risks,

and delay of trial and appeal;"[7] and "the terms of any proposed award of attorney's fees." *See* Fed. R. Civ. P. 23(e)(2)(C)(i), (iii).[8]

### 1.   The Costs, Risks, and Delay of Trial and Appeal

Through this Settlement, Graham achieved her principal goal of making meaningful best-practice reforms to effect the comprehensive prevention of and response to campus sexual assault at UofM. Graham Decl. ¶ 6. In doing so, the Settlement "eliminates the risks to the Settling Parties of continued litigation[.]" ECF No. 36, PageID.1609.

In contrast to the important benefits conferred by the Settlement, litigating this case further would have carried significant costs, risks, and delay with little to no additional payoff. Indeed, the risks here are substantial: UofM's motion to dismiss remains pending, which if granted would terminate Graham's (and thus the Class') action. Despite Class Counsel's confidence in the facts and legal theory that underpin Graham's claims, they recognize that the claims are novel, increasing the risks faced by Plaintiff. Selbin Decl. ¶ 45; *see IUE-CWA v. Gen. Motors Corp.*,

---

[7] Sixth Circuit factors likewise include the complexity, expense, and likely duration of the litigation and the likelihood of success on the merits. *See*, *UAW*, 497 F.3d at 631.

[8] Because the Settlement provides only equitable relief pursuant to Rule 23(b)(2), there is no claims process or distribution plan. *See* Fed. R. Civ. P. 23(e)(2)(C)(ii). Moreover, Plaintiff has not entered into any agreements "in connection with the proposal" under Rule 23(e)(3). *See* Fed. R. Civ. P. 23(e)(2)(C)(iv).

238 F.R.D. 583, 596 (E.D. Mich. 2006) ("there is no such thing as risk-free, expense-free litigation").

Even if the Court were to deny UofM's motion to dismiss—and if Graham prevailed on the appeal[9] sure to follow—the parties would soon face substantial additional expenses including expert discovery and reports, numerous depositions, dispositive motion practice, and pre-trial preparations. *UAW v. Ford Motor Co.*, 2006 WL 1984363, at *24 (E.D. Mich. July 13, 2006) ("The costs and uncertainty of lengthy and complex litigation weigh in favor of settlement."). Moreover, any continued litigation would delay implementation of institutional reform, which provides immediate benefits to the Settlement Class without the risks and costs of further litigation. *See, e.g.*, *In re Delphi Corp. Sec., Derivative & "ERISA" Litig.*, 248 F.R.D. 483, 498 (E.D. Mich. 2008) (the "immediate benefit" of an injunctive relief settlement compared to "the delay, risk and uncertainty of continued litigation" weighed in favor of approval). Considering this and the delay associated with additional litigation, the robust relief secured through this Settlement represents an excellent result for the Settlement Class.

---

[9] State agencies can appeal immediately orders denying claims of immunity. *Town of Smyrna v. Mun. Gas Auth. of Ga.*, 723 F.3d 640, 645 (6th Cir. 2013) (citing *Puerto Rico Aqueduct and Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 147 (1993)).

## 2.   Class Counsel Seek Reasonable Attorneys' Fees and Expenses and a Reasonable Service Award for Graham.

Only *after* they reached agreement with respect to all material terms of the proposed relief set forth in the Settlement, the parties separately negotiated Class Counsel's attorneys' fees and expenses, as well as a service award for Graham, to be paid by UofM, subject to Court approval. Selbin Decl. ¶ 53; ECF No. 34 ¶ 10 PageID.1603. Because the Settlement provides non-monetary relief only under Rule 23(b)(2), any award of attorneys' fees and expenses will not come out of a common fund.

As set forth in Graham's contemporaneously filed papers in support of attorneys' fees and a service award, Class Counsel applies for a total award of attorneys' fees and expenses of $5,000,000, broken down as $4,149,685.25 in attorneys' fees and $850,314.75 in expenses (largely expert and mediation fees). The fee request reflects a very modest 1.2 multiplier on lodestar. As detailed in Graham's contemporaneously filed fee motion, such an award falls well within the range routinely approved by courts.

Class Counsel also seeks, and UofM agrees to pay, a modest service award of $2,500 to Graham. Graham devoted significant resources and energy to this case, provided information to Class Counsel that informed the pleadings and negotiation, and regularly communicated with Class Counsel about strategy and major case developments. *See* ECF No. 32 ¶¶ 8-9, PageID.1497-1498; *see also*

-17-

Section III.A., *infra* (discussing Graham's work on behalf of the Settlement Class). Throughout the litigation, Graham has been involved and informed, agreeing to publicly step forward for the relief achieved. ECF No. 32 ¶¶ 8-9, PageID.1497-1498. Graham reviewed and approved the final settlement agreement after consulting with Class Counsel. *Id.* at ¶¶ 5-7, PageID.1497. In light of this work, the limited award is eminently reasonable and supported by law. *See Daoust v. Maru Rest., LLC*, 2019 WL 2866490, at *6 (E.D. Mich. July 3, 2019) (approving a $5,000 award and noting "service awards are common in class action cases and are important to compensate plaintiffs for the time and effort expended in assisting the prosecution of the litigation, the risks incurred by becoming and continuing as a litigant, and any other burdens sustained by plaintiffs").

> **D.    The Settlement Treats Class Members Equitably.**

The Settlement benefits *all* Class Members equally. Because the relief requires campus-wide reform, the benefits are shared equally among the Settlement Class. As such, the Settlement "does not provide undue preferential treatment to Plaintiff or to segments of the Settlement Class[.]" ECF No. 36, PageID.1609. This factor supports final approval.

> **E.    The Sixth Circuit's Additional Factors Support Approval.**

In addition to the factors articulated in Rule 23(e)(2), Sixth Circuit courts have historically considered the opinions of class counsel, class representatives,

and the reaction of absent class members, and asked whether the settlement supports public interest. *UAW*, 497 F.3d at 631.

Class Counsel have extensive experience handling class actions, including institutional sex abuse cases. Selbin Decl. ¶¶ 3-5. Class Counsel thoroughly investigated and analyzed the claims, made informed judgments regarding the proposed Settlement, and believe it is fair, reasonable, and adequate. *UAW v. Ford Motor Co.*, 2008 WL 4104329, at *26 (E.D. Mich. Aug. 29, 2008) ("The endorsement of the parties' counsel is entitled to significant weight, and supports the fairness of the class settlement."). Likewise, based on his experience and extensive involvement throughout negotiations, Mr. Riley agrees that the proposed Settlement provides fair, reasonable, and appropriate relief to the Settlement Class. ECF No. 34 ¶ 12, PageID.1604.

In addition, Ms. Graham actively consulted with Class Counsel throughout the settlement process and strongly supports the Settlement because it provides groundbreaking reforms to make sure UofM is a safer place for her and all other students. ECF No. 32 ¶ 6, PageID.1497. Thus far, no class member has objected to the Settlement and Class Counsel expect the vast majority of absent Settlement Class members will strongly support the Proposed Settlement and be enthusiastic about the meaningful change and important reforms at their university. Selbin Decl. ¶ 28. The deadline to object is June 27 and Class Counsel will update the

-19-

Court thereafter on whether the Settlement remains without objection.

Finally, the Settlement is in the public interest. "[T]here is a strong public interest in encouraging settlement of complex litigation and class action suits because they are 'notoriously difficult and unpredictable' and settlement conserves judicial resources.'" *Deja Vu Services, Inc.*, 925 F.3d at 899 (quoting *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 530 (E.D. Mich. 2003)). Graham submits there is no basis for not adhering to that policy here. The Settlement provides a tremendous benefit to the public interest by implementing significant institutional reforms to make UofM a safer place for its students. Moreover, the public interest is best served in this case by providing such relief to the Settlement Class as expeditiously as possible. *See Garner Props. & Mgmt., LLC v. City of Inkster*, 2020 WL 4726938, at *10 (E.D. Mich. Aug. 14, 2020) (settlement in the public interest where it "promote[d] fair and expeditious resolution of the matter").

\* \* \*

For all of these reasons, the Settlement satisfies all the Rule 23(e)(2) and Sixth Circuit factors and final approval is warranted here.

## IV. <u>CLASS CERTIFICATION IS APPROPRIATE.</u>

It is well established that a class may be certified for purposes of settlement. *See*, *e.g.*, *In re Automotive Parts Antitrust Litig.*, 2017 WL 3499291, at *12 (E.D. Mich. July 10, 2017) (certifying class settlement classes). Indeed, the fact that the

-20-

parties have reached a settlement weighs in favor of class certification. *Daoust v. Maru Rest., LLC*, 2019 WL 1055231, at *1 (E.D. Mich. Feb. 2, 2019).

To be entitled to class certification, a plaintiff must satisfy each of Rule 23(a)'s four prerequisites: (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation. *See* Fed. R. Civ. P. 23(a). In addition, the proposed class must meet the requirements of one of the three subsections of Rule 23(b). *See id*.

The Court previously considered the proposed Settlement Class and provisionally certified it as complying with Rule 23(a) and (b)(2), appointed Graham as the Settlement Class Representative, and appointed her counsel as Class Counsel. ECF No. 36, PageID.1610-1611. As demonstrated below, the Court should confirm its ruling, certify the class, appoint Graham as Class representative, and appoint Class Counsel as counsel for the Settlement Class.

### A.   Rule 23(a) is Satisfied.

#### 1.   The Settlement Class Meets the Numerosity Requirement.

Courts generally find numerosity is satisfied with a class of forty or more members. *Garner*, 333 F.R.D. at 622 (citing *Davidson v. Henkel*, 302 F.R.D. 427, 436 (E.D. Mich. 2014)). The Settlement Class is sufficiently numerous, as it consists of more than 48,000 current students at UofM, making joinder impracticable. *See Avio, Inc. v. Alfoccino, Inc.*, 311 F.R.D. 434, 443 (E.D. Mich. 2015) ("sheer number of potential litigants in a class, especially if it is more than

-21-

several hundred, can be the only factor needed to satisfy Rule 23(a)(1)" (quoting

*Bacon v. Honda of Am. Mfg., Inc.*, 370 F.3d 565, 570 (6th Cir. 2004))); *Daffin v.*

*Ford Motor Co.*, 458 F.3d 549, 552 (6th Cir. 2006) ("while there is no strict

numerical test, 'substantial' numbers usually satisfy the numerosity requirement").

Accordingly, the Court previously found that the Settlement Class is "so numerous

that joinder of all members is impracticable." ECF No. 36, PageID.1610. As such,

Rule 23's numerosity requirement is satisfied.

### 2. Factual and Legal Questions are Common.

The claims of the Settlement Class are sufficiently common as they depend

on "questions of law [and] fact common to the class[.]" *In re Whirlpool Corp.*

*Front-Loading Washer Prods. Liab. Litig.*, 722 F.3d 838, 852 (6th Cir. 2013). The

commonality "standard is not that demanding[.]" *Beattie v. CenturyTel, Inc.*, 234

F.R.D. 160, 168 (E.D. Mich. 2006), *aff'd in part, remanded on other grounds*, 511

F.3d 554 (6th Cir. 2007) (alteration omitted). Indeed, the Supreme Court has held

"'[e]ven a single [common] question' will do." *Wal-Mart Stores, Inc. v. Dukes*,

564 U.S. 338, 359 (2011). This is because "[w]hat matters to class certification . . .

is not the raising of common questions – even in droves – but rather, the capacity

of a class-wide proceeding to generate common answers apt to drive the resolution

of the litigation." *Id.* at 350 (emphasis in original) (quotation marks and citations

omitted).

-22-

Here, the Court has found that "[t]here appear to be questions of law or fact common to the Settlement Class for purposes of determining whether this settlement should be approved." ECF No. 36, PageID.1610. Indeed, the Class claims focus on UofM's obligations to create a safe environment for its students free from sexual misconduct. *See Powers v. Hamilton Cnty. Pub. Defender Comm'n*, 501 F.3d 592, 619 (6th Cir. 2007) ("Cases alleging a single course of wrongful conduct are particularly well-suited to class certification." (citing *Sterling v. Velsicol Chem. Corp.*, 855 F.2d 1188, 1197 (6th Cir. 1988))).

Furthermore, common questions underlie all Settlement Class members' claims, namely whether UofM has appropriate policies and procedures for the prevention of, and proper response to, sexual violence on campus. The answer to this question is the same no matter who in the Settlement Class asks it, or how many times it is asked, and the answer to this common question is central to this litigation. *See Rikos v. P&G*, 799 F.3d 497, 505 (6th Cir. 2015) (commonality is satisfied where "a common question [] will yield a common answer for the class"). The Court should confirm its finding and hold that Rule 23's commonality requirement is satisfied.

### 3.   Graham's Claims Are Typical of Settlement Class Members' Claims.

Typicality is satisfied if the class representative's claim arises from the same "course of conduct that gives rise to the claims of other class members, and if his or

her claims are based on the same legal theory." *Garner*, 333 F.R.D. at 623 (quoting *Beattie*, 511 F.3d at 561). The typicality test is "not onerous," and "factual distinctions between named and unnamed class members do not preclude typicality." *Cates v. Cooper Tire & Rubber Co.*, 253 F.R.D. 422, 429 (N.D. Ohio 2008).

Here, Graham's claims are "typical of the claims being resolved through the proposed settlement and those of Settlement Class." Prelim. App. Order at 3. Graham's claims arise from the same course of conduct by UofM and the claims all are based on the same legal theory. *UAW v. Gen. Motors Corp.*, 2006 WL 891151, at *10 (E.D. Mich. Mar. 31, 2006) (typicality satisfied where defendant allegedly violated its "uniform obligation" to the class members). Typicality is satisfied.

### 4.   The Settlement Class's Interests are Protected.

As Class Representative, Graham has and will continue to "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). To determine whether a proposed class representative will adequately represent the class, courts ask: (1) whether the proposed class representative shares common interests with unnamed class members; and (2) whether the proposed class representative will prosecute the action vigorously on behalf of the class through qualified counsel. *See Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 543 (6th Cir. 2012).

Graham vigorously served in her representative capacity. Her work to advance the Settlement Class's interests includes: communicating diligently with

Class Counsel, reviewing the complaint and other pleadings, consulting with experts, vetting external co-chair candidates, meeting with UofM representatives, and reviewing settlement terms with Class Counsel, often in real time during negotiations. ECF No. 32 ¶ 9, PageID.1497-1498; *see Delphi*, 248 F.R.D. at 494 (adequacy satisfied where the class representatives vigorously pursued the litigation and settlement of an action seeking injunctive relief). Graham will continue to act in the best interests of the Settlement Class members, all of whom have an interest in ensuring UofM implement best-practice reforms for the comprehensive prevention of and response to campus sexual violence. *See Delphi*, 248 F.R.D. at 494 (noting "the adequacy requirement tends to merge with the commonality and typicality"). There is no conflict between Graham and the Settlement Class.

Additionally, Graham retained counsel with significant expertise in complex civil sex abuse litigation. As detailed in Class Counsel's declarations, Class Counsel are nationally recognized law firms in the field of complex class action litigation, including institutional sexual misconduct cases. *See* Selbin Decl. ¶¶ 3-5; Miller Decl. ¶¶ 4-6, 9-12; and Sauder Decl. ¶¶ 4-11, 13, 15. Informed by their expertise, Class Counsel have zealously represented the Class during litigation, mediation, and the settlement process. *See* Section III.A., *supra* (explaining adequacy of Class Counsel). All firms are well-capitalized, allowing them to

dedicate considerable resources to the fullest extent necessary to achieve the best possible result for class members. Class Counsel are qualified to undertake this litigation.

Separately, Rule 23(g) requires the Court to appoint Class Counsel to represent the Settlement Class. Considering Class Counsel's work in this action, their collective familiarity and experience in handling similar actions, and the resources they have committed to representing the Settlement Class, they should be appointed Class Counsel under Rule 23(g). *See* Selbin Decl. ¶¶ 15-16; Miller Decl. ¶ 2-6, 9-14, 17-25, 29; and Sauder Decl. ¶¶ 4, 12, 14-35, 39; *see also* 2:20-cv-10629 ECF No. 25 (order appointing Class Counsel as Interim Class Counsel in the Survivor Class Action).

## B.    <u>The Settlement Class Meets the Requirements of Rule 23(b)(2).</u>

As the Court found in its Order granting preliminary approval, UofM has "acted or refused to act on grounds that apply generally to the Settlement Class, so that final non-economic relief is appropriate respecting the Settlement Class as a whole." ECF No. 36, PageID.1610; *see also* Fed. R. Civ. P. 23(b)(2) (permitting class treatment where defendants "ha[ve] acted or refused to act on grounds that apply generally to the class, so that final injunctive relief . . . is appropriate respecting the class as a whole"). The operative question before the Court at preliminary approval and here "is not whether Plaintiffs [are] entitled to relief on

the merits; the question is whether the relief Plaintiffs request[ is] appropriate for the entire class." *Dozier v. Haveman*, 2014 WL 5483008, at *25 (E. D. Mich. Oct. 29, 2014).

Here, the relief provided—the creation of a multidisciplinary standing committee composed of local community and campus stakeholders that provides a collaborative approach to preventing and appropriately responding to sexual violence on campus—is indivisible, respects the Settlement Class as a whole, and is exactly the sort of global redress appropriate for a 23(b)(2) class. *See, e.g.*, *Cole v. City of Memphis*, 839 F.3d 530, 540 (6th Cir. 2016) (Rule 23(b)(2) satisfied where plaintiffs sought and obtained an injunction "to protect all class members from future harm"). Thus, "final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2).

Class treatment is particularly appropriate where, like here, the action seeks relief to address institutional policies and practices. *See, e.g.*, *Malam v. Adducci*, 475 F. Supp. 3d 721, 744 (E.D. Mich. 2020), *amended*, 2020 WL 4818894 (E.D. Mich. Aug. 19, 2020) (certifying class of noncitizen detainees seeking declaratory and injunctive relief to protect themselves from COVID-19); *Yates v. Collier*, 868 F.3d 354, 371 (5th Cir. 2017) (affirming class certification where class of prisoners challenged excessive heating in prison); *In re District of Columbia*, 792 F.3d 96, 102 (D.C. Cir. 2015) (upholding class certification where class of citizens

challenged failure of municipality to provide community-based care under

Medicaid). Accordingly, certifying the Class under Rule 23(b)(2) is appropriate.

## V.    **CONCLUSION**

For the foregoing reasons, Graham respectfully requests the Court (1) approve

the Settlement as fair, reasonable, and adequate; (2) certify the Settlement Class; (3)

appoint her as Class Representative for the Settlement Class; and (4) appoint Class

Counsel as counsel for the Settlement Class.


Dated: May 26, 2022                         Respectfully submitted,

                                            */s/ E. Powell Miller*
                                            E. Powell Miller (P39487)
                                            Sharon S. Almonrode (P33938)
                                            THE MILLER LAW FIRM, P.C.
                                            Rochester, MI 48307
                                            (248) 841-2200
                                            Email: epm@millerlawpc.com
                                            Email: ssa@millerlawpc.com

                                            Jonathan D. Selbin
                                            Annika K. Martin
                                            Patrick I. Andrews
                                            LIEFF CABRASER HEIMANN &
                                            BERNSTEIN, LLP
                                            250 Hudson Street, 8th fl.
                                            New York, NY 10013
                                            (212) 355-9500
                                            Email: akmartin@lchb.com
                                            Email: jselbin@lchb.com
                                            Email: pandrews@lchb.com

Joseph G. Sauder
Lori G. Kier
Joseph B. Kenney
SAUDER SCHELKOPF LLC
1109 Lancaster Avenue
Berwyn, PA 19312
(888) 711-9975
Email: jgs@sstriallawyers.com
Email: lgk@sstriallawyers.com
Email: jbk@sstriallawyers.com

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this 26th day of May 2022, a copy of the foregoing Plaintiff's Memorandum in Support of Final Approval of Settlement Agreement was filed electronically. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

*/s/ E. Powell Miller*
E. Powell Miller
